**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James BRYANT, Defendant–Appellant.**

**No. 92–1468.**

United States Court of Appeals,
Sixth Circuit.

Submitted Dec. 10, 1992.
Decided and Filed Dec. 15, 1992.*

Lawrence E. Spong (briefed), Office of the U.S. Atty., Detroit, MI, for U.S.

David W. Wright (briefed), Bloomfield Hills, MI, for James Bryant.

* This decision was originally issued as an "unpublished decision" filed on December 15, 1992. On February 16, 1993, the court designated the opinion as one recommended for full-text publication.

Before: GUY and NORRIS, Circuit Judges; and PECK, Senior Circuit Judge.

PER CURIAM.

Defendant, James Bryant, appeals from a sentence of 200 months imposed after he pleaded guilty to two counts of distribution of cocaine base, one count of distribution of heroin, and one count of being a felon in possession of a firearm.

Upon review of the record made at sentencing, we are convinced that a remand for resentencing is required.

I.

In a drug prosecution, the quantity of drugs involved is a significant component of the sentence computation. U.S.S.G. § 2D1.1. For ease of computation, the guidelines contain as part of section 2D1.1 a table of equivalencies which converts all drug quantities into gram or kilogram units of marijuana. For example, one gram of heroin is rated the equivalent of one kilogram of marijuana. As one would expect, the larger the quantity of drugs, the larger the base offense level. When the quantity of drugs involved is near the division point between two base levels, the manner of computing quantity becomes very significant. Such is the case here.

The government contends that the quantity of drugs here equates to at least 1,000 but less than 3,000 kilograms of marijuana. This would result in a base offense level of 32 which, combined with defendant's criminal history score of IV, would result in a sentencing range of 168 to 210 months. Defendant argues that the amount of drugs should equate to less than 1,000 kilograms and should result in a base offense level of 30, yielding a sentencing range of 135 to 168 months.

To illustrate how important relatively small differences in computation can be, a defendant's sentence, computed on the basis of an equivalency of 999.99 kilograms, would be eligible for a significantly lower sentence than a defendant who equates out to being chargeable with 1,000 kilograms. Thus, under the facts here, one gram could make a difference of as much as 75 months in the sentence. When the stakes are this high, some precision is called for.

II.

We turn now to what actually happened in this case. The first significant factor is that defendant was charged with five counts of *distributing* drugs. He was not charged with conspiracy or attempt to distribute. All of the distribution charges resulted from sales to an undercover agent, so the narcotics purchased literally went from the hands of the agent to those of the chemist who made the necessary analyses.

The second significant factor is that three different drugs were involved—cocaine powder, cocaine base, and heroin. All of these substances have different equivalencies, and in the case of cocaine powder and cocaine base the equivalency difference can be only described as gigantic. One gram of cocaine powder equates out to 200 *grams* of marijuana, while one gram of cocaine base is rated as equivalent to 20 *kilograms*—a hundredfold difference.

The third important factor is that the October 7 sale of cocaine charged in counts four and five of the indictment involved both cocaine powder and cocaine base. As illustrated earlier, how one breaks down the quantities into either cocaine powder or cocaine base can make a very significant difference in the ultimate equivalencies computed.

Finally, on the issue of quantity computation only, we have the drugs not sold but found in connection with defendant's arrest and the search of a vehicle and residence. These drug quantities were included in sentence computation as relevant conduct.

It is now necessary to examine what the trial judge had before him at sentencing. We start with the presentence report (or PSR), which contains the following:

For sentencing guideline purposes, the defendant is being held responsible for the following sales:

9/17/91, 3.5 grams of cocaine;
9/24/91, 28 grams of cocaine base;
9/25/91, one gram of heroin;
10/7/91, 28 grams of cocaine and 28 grams of cocaine base;
10/17/91, negotiated amount of one quarter kilo (2D1.1, Application Note 12) which is 250 grams of cocaine.

Under relevant conduct, the defendant is also being held responsible for the amounts that were taken from his car, residence and person on 10/17/91. They are: 24.3 grams of heroin from his wallet, 34.0 grams of cocaine from his vehicle and 28.2 grams of cocaine base from his residence. These amounts have been broken down by the drug equivalency table under 2D1.1. In total, the defendant is being held responsible for sentencing guideline purposes, for a total of 315.5 grams of cocaine powder, 84.2 grams of cocaine base, 25.3 grams of heroin, and 112 grams of marijuana. This converted in the equivalency table gives a grand total of 1,709.4 kilograms of marijuana.

Although we will comment further on the above, we note for the present that all of the quantities listed above came to the probation officer from some second-hand source. He made no independent investigation as to the drug quantities. The only second-hand source in the record is the DEA Form 7. A form was completed for each sale and for each suspected drug item seized incident to arrest. These reports are summarized below by date of transaction so they will correspond with the dates in the PSR.

| Date | Substance | Gross Weight by Agent | Gross Weight by Chemist | Net Weight by Chemist |
|---|---|---|---|---|
| 9/17/91 (Indictment Ct. I) | Cocaine HCL [1] | 26.5g | 26.5g | 3.430g |
| 9/24/91 (Count II) | Cocaine base | 47.0g | 47.2g | 22.400g |
| 9/25/91 (Count III) | Heroin | 24.4g | 24.6g | 0.786g |
| 10/7/91 (Counts IV & V) | Cocaine HCL & Cocaine base | 86.0g | 86.0g | 27.800g(HCL) 24.800g(base) |
| 10/17/91 (uncharged sale) | Cocaine HCL | 161.8g | 150.8g | 124.100g |
| 10/17/91 (relevant conduct) | Heroin | 24.3g | 24.1g | residue |
| 10/17/91 (relevant conduct) | Cocaine HCL & Cocaine base | 34.0g | 33.8g | 6.017g(HCL) 0.124g(base) |
| 10/17/91 (relevant conduct) | Marijuana | 39.4g | 39.4g | 9.420g |
| 10/17/91 (relevant conduct) | Cocaine base | 28.2g | 27.5g | 1.278g |

It is now necessary to compare the quantities listed in the PSR with those found in the lab report of the chemist:

| Date | Substance | Presentence Report | Chemist |
|---|---|---|---|
| 9/17/91 | Cocaine HCL | 3.5g | 3.430g |
| 9/24/91 | Cocaine base | 28.0g | 22.400g |
| 9/25/91 | Heroin | 1.0g | 0.786g |
| 10/7/91 | Cocaine HCL | 28.0g | 27.800g |

1. Hereinafter, cocaine powder will be referred to as cocaine HCL as distinguished from cocaine base. This is the chemist's terminology.

| Date | Substance | Presentence Report | Chemist |
|---|---|---|---|
| | Cocaine base | 28.0g | 24.800g |
| 10/17/91 | Cocaine HCL | 250.0g | 124.100g |
| 10/17/91 | Heroin | 24.3g | residue |
| 10/17/91 | Cocaine | 34.0g | 6.017g(HCL) .124g(base) |
| 10/17/91 | Marijuana | .5g | 9.420g |
| 10/17/91 | Cocaine base | 28.2g | 1.278g |

The totals from the presentence report and the chemist reports break down as follows:

| | Presentence Report | Chemist |
|---|---|---|
| Cocaine | 315.5g | 155.330g |
| Cocaine base | 84.2g | 48.478g |
| Heroin | 25.3g | .786g |
| Marijuana | 112.0g | 9.420g |

When the equivalency tables are applied, the difference between the presentence report and the chemist reports are as follows:

| | Presentence Report | Chemist |
|---|---|---|
| Cocaine | 63.100k | 31.070k |
| Cocaine base | 1,684.000k | 969.560k |
| Heroin | 25.300k | .786k |
| Marijuana | .112k | .009k |
| | 1,772.512k[2] | 1,001.425k |

We next address another discrepancy in these figures. Disregarding discrepancies arising from rounding off fractions, we note that in some instances the PSR reports gross weight of drugs and in others net weights as reflected by the chemist's reports. For the dates of September 17, 24, 25, and October 7, the presentence report used the net drug weights. These are the dates involved in the five drug counts in the indictment. However, for reasons that are totally unexplained, when the presentence report addressed relevant conduct, it used gross weights.[3] Since the PSR used net weights for the indictment counts, we have used net weights from the chemist's reports when computing the totals from the chemist's reports. In doing so, we are *not* intending to resolve the issue of whether gross or net weights are appropriate. Rather, we go through this

---

2. In the presentence report, the probation officer indicated a total of 1709.4 kilograms. Although we are unable to ascertain how this figure was arrived at, the difference between it and our figure of 1772.512 kilograms is not important, since both figures are well over the 1,000 kilograms.

3. We are unable to find any source for the use of 112 grams of marijuana, since the *gross* weight on the chemist's report is 39.4 grams.

calculus to show the confusion that permeated the original sentencing hearing.

Since the total we reach from the chemist's report using *net* weights still exceeds 1,000 kilograms, why then do we remand for resentencing? The answer lies in the question which the district judge did not address because he concluded, erroneously we believe, that the defendant had conceded that the total drug equivalency exceeded 1,000 kilograms. We do not believe the record supports such a holding. Crucial to our conclusion are the following transcript excerpts:

MR. SPONG [Assistant U.S. Attorney]: Your Honor, to make this quick, Mr. Wright [defense counsel] has indicated that there were some amounts taken from a house, a search warrant of a house, and some amounts taken from a car at the time of Mr. Bryant's arrest. Without those amounts included, I think we are just shy of the 1,000 to 3,000.

THE COURT: Then you contend he is right?

MR. SPONG: Pardon?

THE COURT: Then your position is he is correct on this?

MR. SPONG: Well, only in terms of the amount that was actually sold to the officer. In terms of the amount sold to the officer, if we don't include what was negotiated for, then he would—

THE COURT: But the Application Note says you include what was negotiated.

MR. SPONG: And that would be my argument.

. . . .

THE COURT: Well, then do you agree there is more than 1,000?

MR. WRIGHT: At this point we would agree there is more than 1,000.

Near the end of the hearing, the following colloquy occurred:

MR. BRYANT: Two, about the quantity that is involved in this matter.

THE COURT: Well, I think we have had a hearing on that. I think both your attorney and the U.S. Attorney have agreed it is over 1,000 kilograms.

MR. WRIGHT: With the ruling, Judge, with the ruling you were going to negotiated amounts, not the actual amounts.

It is clear to us that defendant only agreed that 1,000 kilograms or more were involved, if the use by the probation officer of an alleged negotiated quantity of 250 grams for the uncharged sale of cocaine HCL on October 17 is permissible. We hold under the circumstances here it was error to use the negotiated amount. In assuring the trial judge that the *alleged* negotiated amount for the October 17, 1991, sale was appropriate to use, the government relied on Application Note 1 to section 2D1.4 of the sentencing guidelines.

We first note that section 2D1.4 deals with "attempts and conspiracies," neither of which is a charge against defendant here. Furthermore, the literal reading of Application Note 1 clearly indicates it is inapplicable here.

If the defendant is convicted of an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an *uncompleted* distribution shall be used to calculate the applicable amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

U.S.S.G. § 2D1.4, comment. (n. 1) (emphasis added). The October 17, 1991, sale was a completed transaction; therefore, the negotiated amount is no longer relevant under the circumstances presented here.[4]

4. Note, however, *United States v. Davern*, 970 F.2d 1490, 1493 (6th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1289, 122 L.Ed.2d 681 (1990), where we stated:

Although that note is located under a heading "Attempts and Conspiracies," as the Fifth

Circuit points out in *United States v. Garcia*, 889 F.2d 1454 (5th Cir.1989) *cert. denied,* 494 U.S. 1088, 110 S.Ct. 1829, 108 L.Ed.2d 958 (1990), its application is not limited to attempts and conspiracies. The Fifth Circuit notes that section 2D1.1 specifically directs

This does not dispose of this matter, however. Notwithstanding the assistant United States attorney's comment that without using negotiated amounts the total is shy of 1,000 kilograms, as indicated above, it is not clear to us that, even if the chemist's net amounts are used, the total is less than 1,000 kilograms. To reach 1,000 kilograms, however, the relevant conduct amounts must be included. The district judge did not consider relevant conduct because he accepted the PSR conclusions and the representations of the prosecutor. On remand, each of the amounts sought to be used as relevant conduct must be examined both as to quantity and whether, based upon where the drugs were found and other relevant factors, they properly could be found to belong to the defendant.[5]

On remand, this matter should be reexamined carefully, since it is not at all clear that the government will be able to prove that over 1,000 kilograms are involved. When a defendant pleads guilty to an entire indictment without a plea bargain, as was the case here, it is not guilt or innocence that is at issue. The core of the matter becomes the sentence that will be imposed. Under the sentencing guidelines, a specific sentence is *mandated* once computed according to the formula set forth. Therefore, great care must be taken to ensure the formula is correctly applied since the judge will be without discretion

for the most part to ameliorate the mechanistic result reached.

REMANDED for resentencing.

the sentencing court to note if, as in this case, the offense of conviction involves "negotiation to traffic." In *Garcia*, the defendant was convicted of distributing eight ounces of cocaine. He had negotiated to sell sixteen ounces to a DEA agent, but ultimately delivered only eight ounces to the agent. The evidence showed that the defendant was capable of producing sixteen ounces. The court traced the Guidelines from Application Note 11 of § 2D1.1 to Application Note 1 of § 2D1.4, and held that the District Court appropriately had used the sixteen ounces to determine the offense level. (Footnote omitted). Unlike *Garcia*, there was no showing here that the defendant was capable of producing 250 grams. Indeed, the largest delivered amount in a previous sale was 28 grams of cocaine HCL. The general confusion

as to amounts involved, which we have pointed out, convinces us that only a remand will ensure an appropriate computation. Our holding on this point is limited to the facts of this case.

5. For example, the heroin found in defendant's wallet on October 17, 1991, certainly would qualify as relevant, but the chemist found only heroin residue. How much heroin, if any, can be charged against the defendant from what was found in his wallet will have to be determined at the hearing.