UNITED STATES of America, Plaintiff–Appellee,

v.

Michael Angelo FLOWAL, Defendant–Appellant.

No. 97–5412.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 6, 1998.

Decided Dec. 29, 1998.

David Bunning (argued and brief), Assistant U.S. Attorney, Covington, Kentucky, Joseph L. Famularo, U.S. Attorney, Lexington, Kentucky, for Plaintiff–Appellee.

Roger N. Braden (argued and briefed), The Lawrence Firm, Cincinnati, Ohio, for Defendant–Appellant.

Before: KEITH, BATCHELDER, and COLE, Circuit Judges.

KEITH, J., delivered the opinion of the court, in which COLE, J., joined. BATCHELDER, J. (pp. 964–65), delivered a separate opinion concurring in part and dissenting in part.

## OPINION

KEITH, Circuit Judge.

Defendant–Appellant Michael Angelo Flowal appeals his jury conviction and sentence for possession with intent to distribute cocaine. Defendant–Appellant challenges the district court's determination of the weight of the drugs used in sentencing defendant. For the reasons stated below, we **REMAND** the defendant's sentence to the district court for further determinations with respect to the weight of the drugs.

### I.

The grand jury indicted Michael Angelo Flowal on June 12, 1996 and charged him

with one count of possession with intent to distribute approximately 5.2 kilograms of cocaine in violation of 21 U.S.C. § 841(a)(1). Flowal pled not guilty to the indictment.

On August 23, 1996, Flowal moved the district court to appoint an expert to weigh the cocaine. After a hearing on the defendant's motion, the district court granted the motion and ordered the DEA to reweigh the cocaine.

Following a two day trial, the jury returned a verdict of guilty. On January 22, 1997, the defendant submitted objections to the presentence investigation report. The defendant argued that the reweigh amount of 4.997 kilograms of cocaine, rather than the initial weighing of 5.008 kilograms, should be used to determine his sentence. The defendant then argued that the offense level was improperly calculated, and that the defendant's criminal history category was improperly calculated by the probation office. Finally, he argued that the guidelines were unconstitutional.

On February 6, 1997, a sentencing hearing was held. After the hearing, the defendant filed a motion to renew his objections and request a downward departure from the guidelines. The district court determined that the weight of the cocaine for sentencing purposes was 5.000 kilograms. On March 19, 1997, following the sentencing hearing, the court overruled the defendant's objections to the presentence report and sentenced the defendant to life imprisonment.

## II.

The defendant went to the Los Angeles airport on May 16, 1996 and checked two pieces of luggage for which he received two claim tickets. He was scheduled to travel from Los Angeles to Fort Wayne, Indiana with connecting flights through Dallas and Cincinnati. Jim Hughes, a Drug Task Force officer in Dallas, called the drug task force officers at the Greater Cincinnati/Northern Kentucky International Airport and alerted them of the defendant's arrival. Upon receiving the information, the officers located the defendant's luggage and asked the defendant for permission to look in his bags. After searching the defendant's luggage, the officers found five bundles of what appeared to be narcotics. The defendant was then arrested.

When the drugs were taken to the police station, they were weighed and found to be approximately 5.2 kilograms. The drugs were then taken to Chicago where they were weighed again by DEA agent Andrea Michiels. She determined that the cocaine had a net weight of 5.008 kilograms. On September 24, 1996, pursuant to court order, Brian Maloney, a DEA forensic chemist, reweighed the cocaine and determined that it had a net weight of 4.997 kilograms.

## III.

The district court's determinations of the quantity of drugs attributable to a defendant are reviewed under the clearly erroneous standard of review. *United States v. Walton*, 908 F.2d 1289, 1300–01 (6th Cir. 1990). A sentencing judge's drug quantity determination is not clearly erroneous if supported by "competent evidence in the record." *United States v. Brannon*, 7 F.3d 516, 520 (6th Cir.1993).

The defendant first argues that the district court committed clear error when it concluded that the amount of cocaine that should be attributable to him was 5.000 kilograms. The district court found that because the defendant intended to possess and distribute five kilograms, the defendant should be held accountable for that amount. The district court then took into account the defendant's two prior felony convictions and sentenced the defendant to a mandatory term of life imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A) [1].

1. Section 841(b)(1)(A) provides, in relevant part:
 (b) Penalties
 ... [A]ny person who violates subsection (a) of this section shall be sentenced as follows:
 (1)(A) In the case of a violation of subsection (a) of this section involving—
 (ii) *5 kilograms or more* of a mixture or substance containing a detectable amount of—

 (III) cocaine ...
such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life ... If any person commits a violation of this subparagraph after two or more prior convictions for a felony drug offense have become final, such person shall be sen-

The drugs at issue were weighed on three different occasions. The cocaine was first weighed at the airport when it was discovered, but only a gross weight determination was obtained. The gross weight was determined by placing all of the cocaine, in all of its original packaging, into the evidence bags and then weighing it. There was no determination of the actual weight of the drugs because the weight of the packaging was not subtracted from the total weight. The next weighing did not occur until two months later on July 16, 1996. DEA employee Andrea Michiels weighed and analyzed the cocaine and determined that it had a net weight of 5.008 kilograms. On September 24, 1996, Brian Maloney, a DEA forensic chemist re-weighed the cocaine and determined that it had a net weight of 4.997 kilograms.

The two DEA agents used slightly different weighing techniques. Michiels took a bag off a roll, cut it and weighed it when it was empty. She then put the cocaine into the bag and weighed it. She subtracted the first weight from the second weight. Maloney took the bag of cocaine powder, weighed it, then poured it out and weighed the empty bag. Unlike Michiels, Maloney did not weigh the bag before the drugs were placed in the bag. At the sentencing hearing, Maloney explained the difference between his and Michiels's numbers by claiming that some of the cocaine may have stuck to the bag when he removed the powder. Additionally, Maloney and Michiels did not use the same scale for measuring the cocaine.

At sentencing, the judge stated the following,

When initially weighed, the powder cocaine seized from the defendant's luggage weighed 5,008 grams. At a later weighing, the powder cocaine weighed 4,997 grams. Expert testimony indicated that the difference in the weights resulted from the fact that a small amount of cocaine sticks to the weighing vessel and to the plastic evidence bags used to store the cocaine.

Regardless of such testimony, the court believes that it is obvious from the evidence that the defendant (or the person who hired him) intended to—and did indeed—transport five kilograms of powder

cocaine in interstate commerce with the intent to distribute it. Therefore, the court believes that this is the appropriate amount to use, regardless of how much cocaine stuck to the plastic bags.

■ The defendant claims that the court erred by sentencing him on what it believed to be his intent to transport 5 kilograms of cocaine. The defendant is correct in arguing that it is improper for the court to use intent as an element in determining the weight of narcotics for sentencing purposes. The actual weight is the determining factor. *United States v. Bryant*, 987 F.2d 1225 (6th Cir. 1992); *United States v. Normandeau*, 800 F.2d 953 (9th Cir.1986). "To illustrate how important relatively small differences in computation can be, a defendant's sentence, computed on the basis of an equivalency of 999.99 kilograms, would be eligible for a significantly lower sentence than a defendant who equates out to be being chargeable with 1,000 kilograms." *Bryant*, 987 F.2d at 1226. In the case at bar, the difference between the court's figure of 5,000 grams and Maloney's figure of 4,997 grams is a life sentence. "When the stakes are this high, some precision is called for." *Id.*

This Court has held that a district court must err on the side of caution when choosing between a number of plausible estimates of drug quantities. *United States v. Hill*, 79 F.3d 1477, 1488 (6th Cir.1996). The government cites to the *Hill* case to support its contention that the court should have determined that the first weight of 5.008 kilograms was the proper amount to use. In *Hill* the government's chemist weighed the cocaine and assessed its weight at 20.8 grams. When weighed at a later date, the cocaine was found to weigh 18.6 grams. The chemist who performed the second weighing testified at the sentencing hearing that 0.8 grams of the cocaine had been removed as a sample for testing purposes and that atmospheric conditions in the lab where the cocaine base was stored likely caused it to decrease in weight. *Id.* at 1487. In reviewing the district court's decision that 20.8 grams constituted the proper weight, this Court held,

tenced to a mandatory term of life imprisonment without release. . . .

[W]e hold that the district court did not clearly err by using the weight obtained from the first weighing of the cocaine base since it would be reasonable to conclude, based on the chemist's explanation of the discrepancy, that the initial weighing is likely to be more accurate.

*Id.* at 1488.

The difference between *Hill* and the present case is that the district court in *Hill* based its weight determinations on legitimate factors, whereas in this case the court erroneously based its determination on intent. It is not clear in this case whether the district judge considered the weight determination of either of the two DEA agents. He seems to have randomly chosen a number that falls in between the two based on the fact that he thought the defendant's intent was to distribute 5 kilograms of cocaine.

There is no doubt that the sentencing judge erred by basing his findings on the defendant's intent. The question, however, is whether or not this amounts to clear error. The problem in the case at hand is that the district court did not base its determinations on either the 5.008 kilograms weight determination or the 4.997 kilograms determination. Thus it is not clear which determination he would have found to be more accurate. The defendant argues that it is cases such as this that require the judge, when uncertain, to err on the side of caution. *United States v. Walton,* 908 F.2d 1289, 1302 (6th Cir.1990).

Because of the uncertainty surrounding the weight of the drugs in question, this case is remanded for resentencing. The sentencing court's decision to choose an arbitrary amount that differs from the weights submitted by both DEA agents amounts to clear error. The district court, when sentencing, must make every effort to reach a reliable conclusion as to the weight of the drugs. Simply choosing an arbitrary number somewhere in the middle of a possible range is too speculative and leaves too much room for doubt. It may very well be that on remand the district court will adhere to the first weight determination of 5.008 kilograms, in which case the defendant's life sentence would not be changed. But it is also quite possible that the district court, upon reexamining the weight of the drugs, will use the 4.997 kilogram weight determination, in which case a life sentence would not be mandated. Either way, with such high stakes, the district court should reevaluate its determination of the weight of the cocaine and arrive at a more definite conclusion based on the evidence presented at sentencing. Because of the seriousness of the penalty, and the inability to ascertain upon which legitimate factors, if any, the district court based its determinations, this case is remanded for resentencing.

## IV.

 The defendant also objects to the admission of the trial testimony of Sergeant Brad Winall of the Hamilton County Sheriff's Department. The defendant did not object to this testimony at trial, thus we review it only for plain error. *United States v. Anderson,* 89 F.3d 1306 (6th Cir.1996). The defendant argues that the district court should not have allowed Sergeant Winall to testify at trial regarding cocaine distribution practices and street values of cocaine. He argues that Winall was unqualified to give such testimony because he had nothing to do with this case. The defendant contends that by allowing such testimony, the district court jeopardized his right to a fair trial.

The defendant points out that Sergeant Winall was not assigned to the airport police department, and had no duties with the airport police department. He did not participate at all in defendant's stop at the airport or process any of the evidence in this case. Defendant further notes that Winall is neither a DEA nor a federal agent, but works with the Hamilton County, Ohio Sheriff's Department. Thus, the defendant contends that because Winall had no direct involvement with this case at all, he was not qualified to give any opinions regarding the facts of this case.

 It is well settled that law enforcement officers may give an expert opinion on various criminal practices, if properly qualified under Rule 702 of the Federal Rules of Evidence. *United States v. Johnson,* 575 F.2d 1347, 1360 (5th Cir.1978). Part of the government's case was to prove that the defendant possessed the cocaine "with the intent

to distribute it." Thus, Sergeant Winall was called to explain how cocaine is distributed in the illegal drug trade and to give information regarding the wholesale and street values of the cocaine. Since there was no direct evidence of what was going to happen to the cocaine after it had been delivered by defendant to Indiana, this testimony was relevant to show that the narcotics possessed by the defendant were intended for distribution. Hence, this was the kind of opinion that a qualified expert is allowed to give under Rule 702. Therefore the district court's decision to permit Sergeant Winall to testify was well within the trial court's broad discretion and was not plainly erroneous.

## V.

■■■ The defendant next argues that the jury instructions constructively amended the indictment. This Court reviews whether there was an amendment or a variance to the indictment de novo. *United States v. Robison*, 904 F.2d 365, 368 (6th Cir.1990). The indictment in this case charged the defendant with possession with the intent to distribute 5.2 kilograms of cocaine. Jury Instruction 11 states that the defendant possessed a controlled substance. Thus, the defendant argues that this instruction constructively amended the indictment because it modified the elements of the offense and does not require the jury to find that he possessed cocaine.

■■■ "A variance occurs when 'the charging terms [of the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'" *United States v. Barrow*, 118 F.3d 482, 488 (6th Cir.1997). "In contrast, an amendment involves a change, whether literal or in effect, in the terms of the indictment." *Id.* A variance rises to the level of a constructive amendment when the terms of an indictment are in effect altered by the presentation of evidence and jury instructions to such a degree that there is a likelihood that the defendant may have been convicted of an offense other than that charged in the indictment. *Id.*

In the instant case, the defendant was charged with possession with the intent to distribute cocaine. There was no dispute at trial that the substance was cocaine. Thus,

because the evidence at trial did not prove facts materially different from those alleged in the indictment, there was no variance. Additionally, there is not a substantial likelihood that the defendant may have been convicted of an offense other than that charged in the indictment. Therefore there was no constructive amendment.

## VI.

Next, the defendant contends that the district court erred by overruling his objections to the presentence report. The defendant objected to the following findings: 1) the cocaine seized weighed 5.35 kilograms; 2) his total offense level of 32; and 3) his criminal history category of 5. Defendant's objections are based on the fact that the weight of the cocaine should have been listed as 4.997 kilograms as weighed by DEA chemist Maloney.

This issue is similar to the first issue posed by the defendant. This Court has determined that the district court erroneously determined the weight of the cocaine to be 5.000 kilograms, and has remanded the case to the district court for more specificity. The above listed objections to the presentence report should be reconsidered by the district court on remand insofar as they are affected by the district court's adjusted determination of the weight of the drugs.

The defendant also argues that he was erroneously assessed three points for prior drug convictions. He contends that because the convictions were 8 years old and were petty offenses they should not have been used in the decision to sentence him. However, both offenses were felony drug convictions and were for separate offenses committed on separate dates.

The defendant also argues that the sentencing court should have departed downward from the guidelines. However, in this case, it is in the discretion of the lower court and the court understood its authority to depart from the guidelines but legitimately decided against it.

Thus, the district court did not err in overruling the defendant's objections to the presentence report with the exception of the

criminal offense level which was based on the court's erroneous weight determination.

## VII.

 Defendant next submits that the use of his two prior convictions, for which he has already served his time, to enhance his sentence constitutes double jeopardy. The defendant's double jeopardy challenge presents a question of law which is reviewed de novo. *United States v. Smith,* 73 F.3d 1414, 1417 (6th Cir.1996). Defendant is essentially arguing that he is being punished again for the offenses for which he has already served time. This Court in *United States v. Mack,* 938 F.2d 678, 679 (6th Cir.1991), held that imposing an enhanced sentence due to consideration of a prior conviction does not constitute a second punishment for that offense. It is well established that prior convictions can be used to enhance a defendant's sentence. Consequently, the use of defendant's prior convictions in the present case does not implicate the Double Jeopardy Clause.

## VIII.

 The defendant further contends that the statute he was convicted of violating, 21 U.S.C. § 841(a)(1), is unconstitutionally vague because the terms "felony drug offense" and "knowingly" are not defined. The defendant raises this issue for the first time on appeal, thus any error must amount to plain error to be actionable.

Section 841(a)(1) provides in relevant part, "it shall be unlawful for any person knowingly or intentionally to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." The defendant claims that this statute gives no fair warning to him as to what kind of conduct is prohibited because it does not define the required mens rea. Because there is no definition of knowingly, the defendant claims he could have been convicted for having either actual or constructive knowledge.

This argument fails. The mens rea for the statute is "knowingly or intentionally." It is not necessary for the trier of fact to distinguish between actual and constructive knowledge when it is clear that the defendant had to have known that the luggage contained drugs in order to be convicted under this section. The prosecution had to prove beyond a reasonable doubt that he acted knowingly or intentionally with knowledge of the cocaine. Thus, this statute is not void for vagueness.

 Secondly, the defendant argues that because the term "felony drug offense" is not expressly defined in 21 U.S.C. § 841, it is unconstitutionally vague. The statute provides for a sentencing enhancement "If any person commits such a violation after a prior conviction for a felony drug offense has become final ..." The defendant in the instant case has twice been convicted of and served time for prior felony drug offenses. The statute is not void for vagueness as applied to the defendant.

## IX.

 The defendant further claims that a sentence of life imprisonment without the possibility of parole constitutes cruel and unusual punishment because the sentence is disproportionate with the crime of which the defendant was indicted and convicted. Constitutional challenges to a sentence raise questions of law which are reviewed de novo. *United States v. Smith,* 73 F.3d 1414, 1417 (6th Cir.1996). The defendant points out that had he been convicted based solely on his current conviction, he might have been sentenced to as little as ten years under 21 U.S.C. § 841(b).

While it may seem rather extreme to impose a life sentence on a defendant who is convicted of possession with intent to distribute, this Court is bound by the precedent set forth in *United States v. Hill,* 30 F.3d 48, 50–51 (6th Cir.1994). This Court held in *Hill* that a mandatory term of life imprisonment without release upon a third felony drug conviction did not violate the Eight Amendment's protection against cruel and unusual punishment. The Supreme Court has articulated a "narrow proportionality principle" whereby it held that only "extreme sentences that are grossly disproportionate to the crime are prohibited." *Harmelin v. Michigan,* 501 U.S. 957, 995–97, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991). The defendant in *Harmelin* had been convicted of more than 650 grams of cocaine and the Court deter-

mined that the seriousness of the offense warranted the severe sentence. As a result, the defendant's life term was found not to be grossly disproportionate to the crime for which he was convicted.

The defendant in *Hill* was a third time drug offender, held accountable for a violation involving 177 grams of cocaine base. Applying the principle in *Harmelin*, this Court concluded that Hickey's mandatory life sentence without parole was not so "grossly disproportionate" to his crime as to violate the Eighth Amendment.

In the present case, the defendant had two prior drug convictions of which prior notice was given to the court and to the defendant. We have already held that this matter must be remanded to the sentencing court for a determination of whether the offense of conviction involved at least 5,000 grams of cocaine. Should the district court determine that the offense involved 5,000 grams of cocaine, the circumstances underlying this defendant's conviction are more egregious than those that justified the life sentence imposed in *Harmelin* and are very similar to those in *Hill*. Defendant's Eighth Amendment challenge would, in that case, be without merit.

### X.

■ Finally, the defendant asserts for the first time on this appeal that his statements should have been suppressed as the product of an illegal seizure. However, we have no jurisdiction to hear appeals of suppression issues raised for the first time on appeal. *See United States v. Critton*, 43 F.3d 1089, 1093–94 (6th Cir.1995). Therefore, the defendant has waived his right to have this issue heard on appeal.

### XI.

For the foregoing reasons, the decision of the district court is **AFFIRMED** in part and **REMANDED** in part for a determination of the amount of the drugs attributable to the defendant.

BATCHELDER, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's opinion in all respects except for its decision to remand the case for resentencing to determine the amount of the drugs attributable to Flowal. I part company with the majority on this point because even though the district court improperly used intent to determine attributable quantity, the evidence, well developed in the record, clearly shows by much more than a preponderance that the weight attributable to Flowal could not be less than 5.005 kilograms; thus the district court's error was harmless and a remand for resentencing is a waste of judicial resources.

"In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224 (1937); *see also Dandridge v. Williams*, 397 U.S. 471, 475–76 n. 6, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *United States v. Holt State Bank*, 270 U.S. 49, 55–57, 46 S.Ct. 197, 70 L.Ed. 465 (1926); *United States v. American Ry. Express Co.*, 265 U.S. 425, 435–36, 44 S.Ct. 560, 68 L.Ed. 1087 (1924). This rule is applicable as well in criminal appeals. *See United States v. Spach*, 518 F.2d 866, 872 (7th Cir.1975); *United States v. Finn*, 502 F.2d 938, 940 (7th Cir.1974). The evidence in this case is that Michiels initially weighed the substance to be 5,008 grams, and then used 8 grams to test the substance, giving her a "reserve weight" of 5,000 grams remaining at the end of her testing. Maloney clearly explained that the 8 grams used in Michiels's testing were destroyed in the process and not placed back into the evidence. He also explained that the 3 gram discrepancy between the amount 4,997 grams he found and Michiels reserve weight was probably the result of "static cling," and also stated that discrepancies in the weight of cocaine can be a product of changes in air humidity. These explanations are certainly reasonable for confirming the correctness of Michiels's reserve weight of 5,000 grams, and thus for confirming the 5,008 grams she determined before removing 8 grams for testing. *See United States v. Hill*, 79 F.3d 1477, 1487–88 (6th Cir.) (affirming district court's use of greater weight assessed at first weighing, rather than lesser weight assessed at second weighing, by finding reasonable the second chemist's explanation of

"atmospheric conditions in the laboratory" as accounting for 1.4 grams of a 2.2 gram discrepancy between first and second weighings of cocaine), *cert. denied,* —— U.S. ——, 117 S.Ct. 158, 136 L.Ed.2d 102 (1996); *United States v. Thomas,* 11 F.3d 620, 631–32 (6th Cir.1993) (affirming district court's use of greater, initially determined weight when subsequent decrease could be attributed to evaporation and amounts being removed from initial amount for testing purposes). However, the important point is that even if we disregard Maloney's "static cling" and humidity explanations, *the 8 grams used by Michiels for testing must still be added back onto Maloney's figure,* as his weight amount did not account for it. This leaves us with a total of 5,005 grams. *See Thomas,* 11 F.3d at 631–32 (adding weight of cocaine used in initial testing back onto figure determined by independent expert's subsequent reweighing and finding sum, though less than that initially determined by first expert, to still be above relevant sentencing cut-off amount).

The majority opinion also notes different weighing techniques employed by the chemists, and their use of different scales. However, the weighing techniques were both appropriate, and the only variance in the weights attributable to the different techniques is the "static cling" justification already discussed above, as the only real difference between the two was Michiels's subtracting the weight of the clean bag before the drugs were poured into it, while Maloney subtracted the weight of the bag into which the drugs had been placed by Michiels. Rather than helping Flowal, this further shows that a greater weight is more appropriate, as Michiels's weighing method did not account for the cocaine residue that would have stuck to the plastic in which the drugs were originally placed. Also, the use of different scales is of no moment, as the electronic scales were calibrated annually by an outside calibrating organization and monthly by a chemist.

In short, what initially appears problematic, namely the fact that the first actual weight was 5.008 kilograms and the second was 4.997 kilograms, is not a problem when it is understood that the evidence clearly establishes that 8 grams of the 11 gram discrepancy is the amount used to chemically test the substance in the first instance, which was not accounted for in the second figure. Once it is appropriately added back on to that lower figure, we are left with an amount well above the 5.000 kilogram mark. The furor over the humidity and static cling were red herrings, since the 3 gram discrepancy for which those rationales provide justification only fuels a debate over whether the actual weight was 5.008 kilograms or 5.005 kilograms, a distinction of no moment for sentencing purposes. Accordingly, I would affirm.