**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0597n.06
Filed: August 18, 2006

**No(s) 05-5470/5471**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| *Plaintiff-Appellee*, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| v. | ) | |
| | ) | **O P I N I O N** |
| **ALAN R. MANN and TIFFANY ARNOLD**, | | |
| | | |
| *Defendants-Appellants*. | | |

**BEFORE:**     **BOGGS, Chief Judge; COLE, Circuit Judges; HOOD, District Judge.**[*]

   **R. GUY COLE, JR., Circuit Judge.**   Defendants-Appellants Alan Mann and Tiffany

Arnold appeal their convictions and life sentences for, *inter alia*, conspiracy to manufacture

methamphetamine.  Mann argues on appeal that:  (1) his indictment was defective insofar as it

charged him with two separate conspiracies, rather than one ongoing conspiracy; (2) the district

court abused its discretion in refusing to sever the felon-in-possession count; (3) the district court

erred in failing to dismiss two counts due to insufficient evidence to support a conviction; and (4)

the district court's sentence was unreasonable.  Arnold appeals her conviction and sentence on the

ground that her indictment was constructively amended when the Government sought to prove to

---

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of
Michigan, sitting by designation.

the jury at trial that death resulted from her distribution of methamphetamine. For the reasons that

follow, we **AFFIRM** the convictions and sentences of both defendants.

**I.**

Co-defendants Alan Mann and Tiffany Arnold were indicted on April 21, 2004, on various

counts related to the manufacture and sale of methamphetamine. Each defendant was charged with

two counts of conspiring to manufacture and distribute methamphetamine, in violation of 21 U.S.C.

§ 846. The first count related to events that occurred between September of 1999 and October of

2001. The second count related to an allegedly distinct conspiracy that took place between April

of 2002 and March of 2004. Each defendant was also charged with distributing an unspecified

quantity of methamphetamine on February 24, 2004, and with possessing precursor materials used

to manufacture methamphetamine on that date, in violation of 21 U.S.C. §§ 841(a)(1) and 843(a)(6).

Mann was indicted separately on four additional counts: (1) possession with intent to

distribute five or more grams of methamphetamine on February 26, 2004; (2) possession of

precursor materials used to manufacture methamphetamine on that date; (3) possession of an

unregistered pipe bomb on that date; and (4) being a felon in possession of a weapon on that date,

in violation of federal laws. These acts respectively violate 21 U.S.C. §§ 841(a)(1), 843(a)(6), 26

U.S.C. § 5861(d), and 18 U.S.C. § 922(g)(1). Arnold was indicted separately on one additional

count: distributing an unspecified quantity of methamphetamine, in violation of 21 U.S. § 841(a)(1),

in March of 2004.

Mann and Arnold each pleaded not guilty and were tried separately. Before their trials were

severed, however, Arnold made a motion, joined by Mann, to require the Government to drop one

of the conspiracy counts, arguing that all the conduct charged was part of a single conspiracy. Because the district court believed the question of the number of conspiracies to be one of fact for the jury, the motion was denied. Mann filed a motion to sever the felon-in-possession charge, which was denied as well.

On April 1, 2004, the district court conducted a hearing as to whether Arnold should be detained prior to trial. At this hearing, the Government stated that Arnold was subject to mandatory life imprisonment due to a prior felony conviction and because "it [was] reasonable that the death of [Tina Jones] was caused by Ms. Arnold." The court ordered Arnold's detention. The Government also gave each defendant written notice on September 20, 2004, that they would be subject to enhanced statutory penalties due to their prior convictions.

Mann was tried first, on October 27, 2004. At trial, the Government put on evidence of a controlled buy involving Gerry Lynch, who purchased two grams of methamphetamine from Mann. Arnold assisted in the transaction, which was monitored and videotaped by state police. The Government also presented evidence from local police who had searched Mann's garage with his mother's consent. The officers testified to having recovered in excess of twenty-one grams of methamphetamine, various products used in the manufacture of methamphetamine, and a tube-shaped explosive device ("pipe bomb").

During the search, the phone in Mann's garage rang, and an officer answered it. The officer told the caller that "there was some stuff ready and they could come up and get it." Two men, Dennis Perry and Isaac Mills, one of whom was the caller, arrived in a car and were arrested. Perry cooperated with the Government, testifying at Mann's trial that he intended to purchase

methamphetamine from Mann and that he had done so in the past. The Government also introduced the testimony of Bryan Sampson, Angela Sowders, Paul Lanham, and Melinda Bowman, each of whom testified that they had purchased methamphetamine from Mann, or assisted him or Arnold in its manufacture, at various times between 1991 and 2004.

Evidence was adduced at trial that Mann and Arnold were arrested on March 4, 2004, as the two were leaving Arnold's apartment. Mann was carrying a backpack at the time and Arnold was carrying two backpacks. The backpacks contained equipment commonly used to manufacture methamphetamine; one officer testified that each pack had a "fully functioning" methamphetamine lab in it. The arresting officers found a .32-caliber handgun wrapped in a towel under the hood of Mann's car, which was parked nearby. The car also contained items used in the manufacture of methamphetamine. The officers found $3,756 in cash in Arnold's apartment.

Following his arrest, Mann admitted that he and Arnold had manufactured methamphetamine between September of 1999 and October of 2001, during which time they produced between two and eight ounces of methamphetamine every three weeks. Mann also admitted that he and Arnold produced methamphetamine between April 20, 2002 and March 9, 2004, during which time they produced between a quarter of an ounce to a half of an ounce of methamphetamine every two-to-three weeks.

The jury convicted Mann on all counts, holding him responsible by special verdict for 7.584 kilograms of methamphetamine. Mann was sentenced to two life sentences, two thirty-year sentences, two twenty-year sentences, and two ten-year sentences, all of which were to be served concurrently.

On November 3, 2004, Arnold's trial began. In addition to much of the evidence adduced at Mann's trial, there was evidence that, following her arrest, Arnold admitted that she had witnessed approximately twelve drug transactions in Mann's garage in recent months. According to the Government, Arnold, who did not testify at trial, also admitted to assisting Mann in "bagging" methamphetamine, and that she had on one occasion transported between six and seven grams of methamphetamine from her apartment to Mann. The Government also introduced evidence that Arnold continued to distribute methamphetamine while in jail and that the death of Arnold's fellow inmate, Tina Jones, resulted from her ingestion of methamphetamine that Arnold had distributed. Arnold presented the testimony of Dr. George Riley Nichols, a pathologist, who stated that Jones had "sufficient heart disease to kill her," and that her death may have been the result of heart disease, rather than the ingestion of methamphetamine.

Arnold was convicted on four of the five counts against her, the first conspiracy count having been dismissed on the Government's motion. The jury found by special verdict that Arnold was responsible for manufacturing and distributing 51.007 grams of methamphetamine, and that Jones's death had resulted from the ingestion of some portion thereof. Arnold was sentenced to two life sentences, a thirty-year sentence, and a twenty-year sentence, also to be served concurrently. This timely joint appeal followed.

## II.

We turn first to the conviction and sentence of Alan Mann. Mann argues that the Government improperly charged him with multiple drug conspiracies, that the district court erred in denying his motion to sever the felon-in-possession charge, that he was convicted upon

insufficient evidence, and that the district court's sentence was unreasonable. Each of Mann's arguments must fail.

**A.    Multiplicity**

Mann argues that his indictment was defective insofar as it charged him with two separate conspiracies, rather than with a single ongoing conspiracy. Mann's argument amounts to a claim of "multiplicity," which implicates the double jeopardy clause of the Fifth Amendment. *See United States v. Hart*, 70 F.3d 854, 859 ("Generally, an indictment may not charge a single criminal offense in several counts without offending the rule against 'multiplicity' and implicating the double jeopardy clause." *quoting United States v. Busacca*, 936 F.2d 232, 239 (6th Cir.), *cert. denied*, 502 U.S. 985 (1991)).

Two dangers inhere in a multiplicitous indictment. First, there is the danger that a defendant will be punished twice for the same offense. *See United States v. Gibbons*, 994 F.2d 299, 301 (6th Cir. 1993). Second, a multiplicitous indictment "can prejudice the jury by suggesting that more than one crime has been committed." *United States v. Gullett*, 713 F.2d 1203, 1211-12 (6th Cir. 1983); *see also United States v. Duncan*, 850 F.2d 1104, 1108 n.4 (6th Cir. 1988).

"[T]he test applied by this Court to determine whether double jeopardy has been violated by multiple conspiracy charges is a five factor totality of the circumstances test." *Gibbons*, 994 F.2d at 301. The factors are (1) timing, (2) location, (3) the number and relationship of co-conspirators, (4) the statutory offenses charged, and (5) "any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case." *Untied States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir. 1983).

Where, as here, a finder of fact has determined that multiple conspiracies exist, we must conduct our analysis in the light most favorable to the prosecution, taking pains not to reweigh the evidence or assess credibility. *See United States v. Rios*, 842 F.2d 868, 871-72 (6th Cir. 1988); *United States v. Grunsfield*, 558 F.2d 1231, 1238 (6th Cir. 1977). Furthermore, even if we determine an indictment to be multiplicitous, we cannot reverse a conviction unless "substantial rights of the appellant [were] involved." *Rios*, 842 F.2d at 872.

Taking the evidence in the light most favorable to the prosecution, we find Mann's indictment to be multiplicitous as to the second conspiracy charge. Four of the five factors of our test militate toward the existence of a single conspiracy on these facts. Mann's "second" conspiracy occurred in the same location as the first, and involved the same perpetrators and offenses. The only factor that even arguably militates in favor of two distinct conspiracies is the timing. On the Government's theory, the first conspiracy terminated in October of 2001 when Mann was imprisoned on the basis of an unrelated offense. The second began in April of 2002, upon Mann's release. Yet the law presumes that a conspiracy, once begun, continues to exist until it is affirmatively terminated by its participants. *See Rios*, 842 F.2d at 873; *see also United States v. Chambers*, 944 F.2d 1253, 1256 (6th Cir. 1991) (conspirator's arrest not evidence of affirmative termination). The Government presented no evidence in rebuttal of this presumption.

Although we find error in that Mann's indictment was multiplicitous, his substantial rights were not adversely affected by this error. In this context, our "substantial rights" inquiry is analogous to harmless error review. *See United States v. Warner*, 690 F.2d 545, 548 (6th Cir. 1982) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)). Thus, it is Mann's burden to show that he

was prejudiced by the second count of conspiracy. *Id.* Mann cannot make this showing for at least two reasons. First, Mann faces a mandatory sentence of life imprisonment for each conspiracy. *See* 21 U.S.C. § 841(b)(1)(A)(viii). At present, Mann stands sentenced to two concurrent life sentences, as well as an additional—if also concurrent—120 years of imprisonment on the remaining counts of the indictment. Our merger of the first and second conspiracy would have no practical effect on Mann's sentence.

Second, the possibility that Mann was prejudiced by the suggestion that he has committed multiple crimes is relatively low. In addition to conspiracy to manufacture methamphetamine, Mann was charged with seven other crimes, one of which—being a felon in possession of a firearm—turned on the existence of a prior felony. Moreover, the alternative urged by Mann, namely, that he never stopped manufacturing methamphetamine even while incarcerated, is no less prejudicial than the Government's theory. Finally, the district court explicitly instructed the jury that "[t]he number of charges is no evidence of guilt" and that it was their "duty to separately consider the evidence that relates to each charge." Such "limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Accordingly, we find that Mann has failed to establish that his substantial rights were affected by his multiplicitous indictment.

**B.     Failure to Sever**

Mann next argues that the district court erred in denying his motion, filed pursuant to Fed. R. Crim. P. 14, to sever the count of the indictment that charged Mann with being a felon in possession of a firearm. We generally review a decision not to sever a given charge for abuse of

discretion. *See United States v. Cline*, 362 F.3d 343, 349 (6th Cir. 2004). Where a defendant fails to renew a Rule 14 motion following the close of evidence, however, he has waived such a motion. *See United States v. Swift*, 809 F.2d 320, 323 (6th Cir. 1987) ("[W]e hold that a severance motion will be deemed waived if it is not renewed at the end of the evidence."). This rule is necessary lest "a defendant deliberately fail[] to make a meritorious motion [until] waiting to see what verdict the jury returns." *United States v. Chavis*, 296 F.3d 450, 457 (6th Cir. 2002). Mann did not renew his motion at close of evidence and, accordingly, he has waived any claim to error in the court's failure to sever and may not appeal on its basis.[1] Accordingly, Mann's claim must fail.

## C. Sufficiency of the Evidence

Mann further argues that the evidence underlying his convictions for possessing precursor materials and for being a felon in possession of a firearm was insufficient, and that the district court accordingly erred by denying Mann's motion for judgment of acquittal, filed pursuant to Fed. R. Crim. P. 29, as to those counts. We review such a denial *de novo*, using the same standard as the district court. *See United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992). Thus, we must ask whether, viewing the evidence in the light most favorable to the Government, any rational trier of fact could have found all of the elements of the crime beyond a reasonable doubt. *Id.*

---

[1]It is important to note that Mann made his motion pursuant to Rule 14, which allows for severance where prejudice may result, rather than Rule 8, which disallows joinder where a given count is unrelated. *Compare* Fed. R. Crim. P. 8 *with* Fed. R. Crim. P. 14. Had Mann moved pursuant to Rule 8, we could review his motion. *See Chavis*, 296 F.3d at 457. Furthermore, under our precedent, Mann waived the right to seek severance, rather than forfeited it. Had he merely forfeited some right or objection, this court could review his claim on appeal for plain error. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 733 (1993) ("Mere forfeiture, as opposed to waiver, does not extinguish an 'error' under Rule 52(b).").

Mann was convicted of possessing "equipment, products, and materials which may be used to manufacture methamphetamine," in violation of 21 U.S.C. § 846(a)(6). The Government introduced evidence at trial that a search of Mann's garage by local police revealed such equipment. The Government also introduced evidence that, at the time of his arrest, Mann was carrying a backpack sufficiently full of equipment to construct, in the words of one officer, a "fully functioning methamphetamine lab."

Mann argues that "[i]t cannot be determined, from the proof at trial, who was in possession of the illegal items, and who was merely present." This statement is incorrect, and in any event irrelevant. First, a methamphetamine lab was discovered in Mann's garage on February 26. Second, an officer specifically testified to recovering the components of a methamphetamine lab from Mann's backpack. Another officer testified to recovering items used in the manufacture of methamphetamine, e.g., a propane torch and a bottle of muriatic acid, from a car belonging to Mann. Finally, according to the testimony of a police officer, Mann admitted to manufacturing methamphetamine.

Mann was also convicted of possessing a firearm though a felon, in violation of 18 U.S.C. § 922(g)(1). In support of this charge, officers testified to the recovery of a pistol from inside the hood of a car owned by Mann, which was parked near the place of his and Arnold's arrest. We have repeatedly held that constructive possession may be proven through the presentation of evidence that the defendant had dominion over the location where the firearm was recovered. *See United States v. Kincaide*, 145 F.3d 771, 782 (6th Cir.), *cert. denied*, 525 U.S. 1166 (1999), (citing *United States v. Clemis*, 11 F.3d 597, 601 (6th Cir. 1993) (per curiam)); *United States v. Snyder*, 913 F.2d 300, 304

(6th Cir. 1990). Although, as Mann indicates, Arnold was once observed operating the vehicle, a rational trier of fact could infer that Mann had dominion over the vehicle; he was arrested in its vicinity and, most importantly, he owned it. Accordingly, Mann's final argument fails.

**D.      Reasonableness**

Mann briefly argues that his sentence was unreasonable. The record does not support this contention, as the district court properly considered the relevant factors under 18 U.S.C. § 3553(a). *See United States v. Webb*, 403 F.3d 373, 383 (6th Cir. 2005). In any event, under 21 U.S.C. § 841(b)(1)(A)(viii), Mann's sentence was mandatory.

In short, Mann has failed to demonstrate error necessitating the reversal of his conviction or sentence.

**III.**

We next review the claims of Mann's co-conspirator, Tiffany Arnold. The gravamen of Arnold's challenge is that her indictment was constructively amended when the Government presented evidence at trial that Arnold's distribution of methamphetamine resulted in the death of Arnold's cell-mate Tina Jones, without so alleging in the indictment. Arnold also argues that evidence of Jones's death was inadmissible because it was irrelevant to the Government's case, and that it was unreasonable of the district court to sentence her on the basis of Jones's death. These latter arguments turn upon, and in essence restate, Arnold's challenge based on the constructive amendment or her indictment. Hence, we proceed directly to that claim.

**A.      Standard of Review**

Under our case law, a constructive amendment occurs

> when the terms of the indictment are in effect altered by the presentation of evidence
> and jury instructions which so modify essential elements of an offense charged that
> there is a substantial likelihood that the defendant may have been convicted of an
> offense other than that charged in the indictment.

*United States v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000) (citation omitted). We will not reverse a conviction on the basis of constructive amendment unless the defendant can show (1) a variance between the indictment and jury instructions, and (2) an effect on a substantial right. *Id.* In this context, "[a] substantial right is affected only when the defendant establishes prejudice in his ability to defend himself or to the overall fairness of the trial." *Id.*[2]

Ordinarily, we review a claim of constructive amendment *de novo*. *Id.* at 756 (citing *United States v. Flowal*, 163 F.3d 956, 962 (6th Cir. 1998)). In this case, however, Arnold failed to object at trial to the introduction of evidence of Jones's death. Although defense counsel initially objected to the proposed jury instructions regarding Jones's death on the basis that "it just seems confusing," counsel later withdrew the objection following a brief conference with Arnold. Thus, with no specific objection at trial regarding constructive amendment, we are limited to "plain error" review on appeal. *See* Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 733 (1993); *United States v. Critton*, 43 F.3d 1089, 1094 (6th Cir. 1995). Under this stringent standard, the appellant must demonstrate an error that is "obvious" or "clear." *United States v. Rogers*, 118 F.3d 466, 472 (6th Cir. 1997). As with the underlying claim of constructive amendment, the appellant must also demonstrate an effect upon substantial rights. *Id.*

---

[2]When an indictment is actually amended, i.e., were the charging terms themselves are abandoned and rewritten, we presume prejudice and, absent extenuating circumstances, reverse. *See, e.g., United States v. Ford,* 872 F.2d 1231, 1235 (6th Cir. 1989); *United States v. Beeler*, 587 F.2d 340, 342 (6th Cir. 1978) (*citing United States v. Somers*, 496 F.2d 723, 744 (3rd Cir. 1974)).

**B.      Variance**

We find that Arnold has shown a variance between her indictment and the Government's case at trial.  In *United States v. Rebmann*, 226 F.3d 521, 521 (6th Cir. 2000), we noted that an indictment closely analogous to that at issue here was "probably deficient" under Supreme Court case law because it failed to charge the "if death results" component of 21 U.S.C. § 841(b)(1)(C) separately.  *See also United States v. Rebmann*, 321 F.3d 541, 541 (6th Cir. 2000) (*Rebmann II*) ("[U]nder the Supreme Court's reasoning in the recent cases of *Jones*, *Castillo*, and *Apprendi*, the 'if death results' provision . . . is not a mere sentencing factor . . ., but rather constitutes an element of a separate crime (distribution resulting in death) that must be proved beyond a reasonable doubt.").  Indeed, the indictment at issue in *Rebmann* was arguably on firmer footing than that of Arnold because it at least made an "additional reference to the penalty statute." *Id.*  Arnold's indictment mentions only 21 U.S.C. § 841(a)(1), i.e., the offense statute.

Our dicta in *Rebmann* and *Rebmann II* read Supreme Court precedent correctly.  In *Castillo v. United States*, 530 U.S. 120 (2000), for instance, the Court held that the increase in "penalty" that resulted from the use of a machine gun under 18 U.S.C. § 924(c)(1) was in fact an element of a separate crime. *Id.* at 131.  As such, the Court held that "*the indictment* must identify the firearm type and a jury must find that element beyond a reasonable doubt." *Id.* at 123 (emphasis added).  Similarly, in *Jones v. United States*, 526 U.S. 227 (1999), the Court held in the context of a federal carjacking statute that, although the relevant statute appeared to treat "serious bodily injury" as a sentencing factor, it was in fact a separate offense. *Id.* at 236.  Again, therefore, it must be "*charged*

*by indictment*, proven beyond a reasonable doubt, and submitted to a jury for its verdict." *Id.* at 252 (emphasis added).

Arnold was charged only with "knowingly and intentionally distribut[ing] a mixture of substance containing a detectable amount of methamphetamine." Meanwhile, the jury was presented with evidence that a death resulted from the ingestion of methamphetamine distributed by Arnold, and ultimately instructed to decide whether "the use of methamphetamine by Tina Jones result[ed] in her death." Because the "if serious bodily injury results" statutory language in *Jones*, for instance, cannot be distinguished from the "if death results" statutory language at issue here, there has been a clear variance between Arnold's indictment and the evidence presented at trial.

## C.     Effect on a Substantial Right

Having found a variance, we must next determine whether that variance clearly prejudiced Arnold's ability to mount a defense, or otherwise rendered her entire trial unfair. *See United States v. Prince*, 214 F.3d 740, 757 (6th Cir. 2000). We hold that it did not. Arnold was on notice as early as April 1, 2004, the date of her initial appearance under Fed. R. Crim. P. 5, that the Government intended to prove that Jones's death resulted from Arnold's distribution, with the possible result of a life sentence. Specifically, the Government argued that "it is reasonable that the death of the other inmate was caused by Ms. Arnold . . . [and b]ased upon that and her prior record, her sentence is also a minimum mandatory of life imprisonment." Moreover, at Arnold's arraignment on April 27, 2004, the district court asked defense counsel in Arnold's presence whether Arnold and Mann "underst[ood] the charge or charges against them and the penalties that could be imposed in the event of a conviction," to which defense counsel responded affirmatively.

Arnold's trial did not begin until November 3, 2004, i.e., seven months after Arnold's initial appearance. Furthermore, Arnold presented the testimony at trial of Dr. George R. Nichols, a well-credentialed clinical pathologist and retired medical examiner. Dr. Nichols noted that the deceased, whose autopsy report he had reviewed in addition to other material, suffered from "several different forms of heart disease ongoing in her at the same time." Dr. Nichols opined that Jones "had sufficient heart disease to kill her, and . . . she was ill from her heart disease before she died." Although the jury did not ultimately attribute Jones's death to heart disease, Arnold's presentation of this testimony suggests that Arnold had a meaningful opportunity to rebut the Government's allegation.

We have found that notice and the opportunity to mount a meaningful defense lie at the heart of the law's distaste for constructive amendment. *See, e.g., Prince*, 214 F.3d at 757 ("The purposes underlying the rule against amendments and constructive amendments include notice to the defendant of the charges he will face at trial . . ."); *United States v. Feinman*, 930 F.2d 495, 500 (6th Cir. 1991); *compare Lucas v. O'Dea*, 179 F.3d 412, 417 (6th Cir. 1999) ("Because it exposed Lucas to charges for which he had no notice and thus no opportunity to plan a defense, the variance from the indictment to the jury instruction constituted a constructive amendment that deprived him of his Fourteenth Amendment right to notice of the charges against him."). For the preceding reasons, we find that Arnold has been afforded both.

Ultimately, reversal upon plain error review is "very limited," and reserved for trials "infected with error so plain [that] the trial judge and prosecutor were derelict in countenancing it." *United States v. Cox*, 957 F.2d 264, 267 (6th Cir. 1992). Given her notice and opportunity, we are

unable to place Arnold's trial in such a category.  Accordingly, Arnold's claim of constructive

amendment fails.

**IV.**

For the reasons that precede, we **AFFIRM** the conviction and sentence of Alan Mann and

Tiffany Arnold.