# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2110

_____

United States of America,                    *
                                             *
                Appellee,                    *
                                             *        Appeal from the United States
        v.                                   *        District Court for the
                                             *        District of South Dakota.
Roy B. One Star,                             *
                                             *            [PUBLISHED]
                Appellant.                   *


_____

Submitted: April 20, 2006
Filed: October 12, 2006

_____

Before WOLLMAN, HANSEN, and BENTON, Circuit Judges.

_____

HANSEN, Circuit Judge.

Roy B. One Star was charged with sexually abusing and assaulting his daughters while residing with them on the Rosebud Indian Reservation in South Dakota. A jury convicted One Star of multiple counts of aggravated sexual abuse of a child, in violation of 18 U.S.C. § 2241(c), and one count of simple assault, in violation of 18 U.S.C. § 113(a)(5). The district court[1] sentenced him to life in prison. One Star appeals his convictions, and we affirm.

_____

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

# I.

At trial, One Star's daughters, R.O.S. and J.O.S., testified that their father had sexually abused them when they were young children. R.O.S. was 18 years old at the time of trial, and she testified that her father had sexually abused her from the time she was 6 years old until she was 12. She described how the abuse had escalated from inappropriate touching and rubbing to vaginal and anal intercourse. She testified that once, he pinned her down to have intercourse on the floor, and later she was hospitalized for resulting back and genital pain. The abuse stopped only after she threatened to report him when she was 12 years old. R.O.S. testified that she did not report the abuse when it was occurring because she had been afraid of One Star, who also beat her, and she wanted to forget about his abuse. She recalled an incident when One Star was physically abusing J.O.S. by choking her. When she tried to intervene to help her sister, One Star then beat her (R.O.S.) with a broom handle.

R.O.S. never witnessed One Star molesting J.O.S., who was 13 years old at the time of trial. R.O.S. described J.O.S. as being "a little bit slow" due to fetal alcohol syndrome. (Trial Tr. at 67-68.) R.O.S. began to suspect that One Star was abusing the younger sister because One Star would leave with J.O.S. for long periods of time. Then upon their return, J.O.S. would silently go straight to her room, and one time she was crying. Also, when J.O.S. was 6 or 7 years old, R.O.S. noticed blood in J.O.S.'s underwear when helping her get ready for school. When R.O.S. asked her about it, J.O.S. got angry and denied that any sexual abuse had occurred.

J.O.S. testified that One Star began abusing her when she was 6 years old. He began by touching her between her legs through or under her clothing. Before long, he was taking off her clothes, engaging in vaginal intercourse with her, and requiring her to perform oral sex on him. The Department of Social Services (DSS) removed J.O.S. from the home at age 9 or 10 for unrelated circumstances. J.O.S. did not tell anyone about the abuse until recently because she was afraid of One Star, who had

told her not to tell anyone. She did not tell her family members about the abuse when it was occurring, she denied the abuse to social workers when she was initially removed from One Star's custody, and she did not mention it to her foster parents.

One Star's stepmother, Zouie One Star, first reported allegations of abuse to the DSS. She testified pursuant to a subpoena issued by the United States Attorney's Office. One Star and his daughters had lived with her from time to time. She admitted that she had reported to a social worker that she thought One Star had been "touching" R.O.S. and J.O.S. (Id. at 18.) Minutes later in the trial she denied ever telling a social worker that One Star had been "touching the girls," and stated that she had suspected physical abuse, not sexual abuse. (Id. at 23.) Zouie testified that R.O.S. and J.O.S. had never reported any sexual abuse to her, although one night R.O.S. had stayed up all night crying. When she confronted One Star about it, he told her he had disciplined R.O.S. and that she (Zouie) should mind her own business. Zouie also testified that whenever One Star was around, R.O.S. wanted to leave the house. She confirmed that One Star was "strict with his daughters." (Id. at 24.)

Rique Moore, the DSS supervisor for Child Protection Services in Mission, South Dakota, testified that Zouie had called on October 29, 2003, to report her suspicion that One Star might have sexually abused the girls. Based upon that call, a DSS report was generated, and the case was referred to the Federal Bureau of Investigation (FBI). At that time, R.O.S. was already living with other relatives in New Mexico, and J.O.S. was in a foster home placement. Prior to Zouie's call, however, there had been no reason to suspect sexual abuse by One Star.

FBI Special Agent David Mackey testified about his interviews of each girl and One Star. He first interviewed J.O.S., who initially denied the sexual abuse but eventually spoke of it during the hour-and-a-half-long interview. He said that R.O.S., who was living in New Mexico at the time, initially had only fuzzy memories of the abuse. She reported more about the abuse in an interview after she returned to South

Dakota. Special Agent Mackey testified about his attempt to interview One Star. He said that One Star provided some background information but then declined to be interviewed. Special Agent Mackey also testified that One Star declined to be interviewed after he had been taken into custody and read his rights. The district court immediately cautioned the jury to disregard that comment and directed that the answer be stricken from the record.

Dr. Lori Strong, a pediatrician and the director of a child advocacy program, testified that J.O.S. was referred to her for an examination in March 2004. In examining her, Dr. Strong found a small tear to the top of her hymen and a complete tear to the tissue outside her hymen. There was no visible damage to any other area, such as her anus. Dr. Strong stated her opinion that the examination of J.O.S. was consistent with a history of sexual abuse. R.O.S. did not undergo a physical examination because she was currently sexually active and had given birth.

Two witnesses testified for the defense. Belva Black Lance, One Star's girlfriend until 2003, testified that One Star, J.O.S., and R.O.S. had lived with her and her children on and off for three or four years beginning around the time J.O.S. was 8 years old. During this time, neither J.O.S. nor R.O.S. indicated to her that they were suffering sexual abuse. She testified that R.O.S. was a difficult child to raise and that One Star would have to discipline R.O.S. by not permitting her to go places with friends, which made R.O.S. angry with him. Belva's daughter also testified, stating that One Star had never abused her and that J.O.S. and R.O.S. had never indicated to her that they were being sexually abused.

A Superseding Indictment charged One Star in Counts I-VI with six counts of aggravated sexual abuse of a child, see 18 U.S.C. § 2241(c) (five counts related to acts committed against J.O.S. and one count for acts committed against R.O.S.), Count VII charged one count of engaging in a sexual act by force against R.O.S., see 18 U.S.C. § 2241(a), and Count VIII charged assault with a dangerous weapon, see 18 U.S.C.

-4-

§ 113(a)(3).  The district court granted the defense motion for a judgment of acquittal on Count VII, concluding that there was no evidence of force with regard to a sex act. The district court denied the defense motion for a mistrial, which was based on the prosecutor's exchange with Special Agent Mackey regarding One Star's post-arrest silence.  The district court again cautioned the jury, however, that it should not consider or even discuss "the fact that the defendant refused to make any statement to Agent Mackey."  (Trial Tr. at 152.)

The jury convicted One Star on all six counts of aggravated sexual abuse of a child.  On Count VIII, the jury convicted him of the lesser included offense of simple assault.  The district court sentenced One Star to life in prison on each count of aggravated sexual abuse and one year in prison for the assault count, with all sentences to run concurrently.

## II.

On appeal, One Star argues (1) that the prosecutor violated his constitutional right to remain silent by soliciting Special Agent Mackey's testimony regarding his post-Miranda[2] silence, and (2) that there was insufficient evidence to convict on the six counts of aggravated sexual abuse.

### A.  Prosecutorial Misconduct

At trial, the prosecutor first elicited testimony from Special Agent Mackey concerning his initial contact with One Star.  He stated that One Star had initially agreed to an interview, but after giving background information, One Star indicated he wanted to first speak with his father.  One Star was not in custody at the time. Defense counsel made no objection to this testimony, which did not implicate One

---

[2]Miranda v. Arizona, 384 U.S. 436 (1966).

Star's right to remain silent. See Jenkins v. Anderson, 447 U.S. 231, 240-41 (1980) (holding, "the use of prearrest silence to impeach a defendant's credibility does not violate the Constitution"). Then the prosecutor asked if One Star had declined to be interviewed after being taken into custody and given his Miranda warnings. Special Agent Mackey answered, "Yes, he did." (Trial Tr. at 104.) The defense made no objection, but the district court immediately interrupted, cautioning:

> He has a constitutional right to remain silent after the Miranda warnings and--the jury should disregard that . . . entirely. That's a smart policy, in fact, if you are under arrest not to make any statements to the police. And, so, do not hold that against this defendant in any way. And the answer is stricken.

(Id.)

At the close of trial, One Star's attorney moved for a mistrial on the basis of this exchange. The district court agreed that the question and answer were improper but denied the motion for a mistrial, noting that the court had immediately admonished the witness and the prosecutor and instructed the jury to disregard the comment. The district court accommodated One Star's request to include an additional caution in the jury instructions.

One Star argues that the prosecutor's question and the answer given unduly prejudiced his opportunity for a fair trial. "An improper question by government counsel may constitute prosecutorial misconduct." United States v. Guerra, 113 F.3d 809, 815 (8th Cir. 1997). "[P]rosecutorial misconduct occurs when the prosecutor comments at trial, directly or indirectly, on the defendant's failure to testify." United States v. Triplett, 195 F.3d 990, 995 (8th Cir. 1999) (emphasis omitted), cert. denied, 529 U.S. 1094 (2000). Using a defendant's post-arrest, post-Miranda silence as impeachment evidence violates the Due Process Clause. Doyle v. Ohio, 426 U.S. 610, 619 (1976). To warrant a reversal, however, the prosecutor's remarks must have been

-6-

both improper and prejudicial to the defendant's substantial rights so as to deny him a fair trial. Guerra, 113 F.3d at 815; see also United States v. Martin, 391 F.3d 949, 955 (8th Cir. 2004) ("[W]e first ask whether a Doyle violation occurred, and, second, whether that violation was harmless beyond a reasonable doubt.").

To determine whether a Doyle violation was harmless beyond a reasonable doubt, we consider the following factors: (1) "whether the government made repeated Doyle violations," (2) "whether any curative effort was made by the trial court," (3) "whether the defendant's exculpatory evidence is transparently frivolous," and (4) "whether the other evidence of the defendant's guilt is otherwise overwhelming." Martin, 391 F.3d at 955 (internal marks omitted) (quoting Bass v. Nix, 909 F.2d 297, 305 (8th Cir. 1990)). Here, there was only one Doyle violation, the district court immediately struck the answer and gave a curative instruction, and the court included yet another curative instruction in the final jury instructions at the defendant's request. See id. (discussing a case in which this court found harmless error despite three Doyle violations and no curative actions by the trial court where the evidence of guilt was overwhelming and a frivolous defense was presented). On the other hand, One Star's defense of denying the abuse was not "transparently frivolous." Id. (internal marks omitted). Credibility was the crux of the case. The government's case against One Star rests almost solely on the testimony of his two daughters, both of whom initially denied the abuse and admitted having had trouble remembering the abuse. Neither daughter had reported the abuse to anyone while it was occurring, nor did they complain until questioned. Their testimony at trial, however, explained that they had tried to forget the traumatic events, which they were reluctant to speak of immediately. At trial, they recounted in detail multiple incidents of sexual abuse and trauma that the jury was free to believe. There also was corroborating circumstantial evidence, including evidence of their demeanor during the period when they were being abused (for instance, there was testimony of each of them crying after being with their father and wanting to be away from their father), and physical evidence of damage to J.O.S.'s hymen and R.O.S.'s back and genital pain.

Balancing all of these factors, we conclude that, on the record before us, the single <u>Doyle</u> violation is harmless in light of the district court's quick sua sponte cautionary response, the strength of the personal testimony of the victims, and the corroborating circumstantial and physical evidence.

B. Sufficiency of the Evidence

One Star argues that the evidence was insufficient to convict him of aggravated sexual abuse. Specifically, he points to evidence that R.O.S. admitted she was resentful because her father was strict, that both daughters had trouble remembering the abuse, and that J.O.S., who suffers from fetal alcohol syndrome, admitted she had been coached about what to say at trial. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the verdict and making all reasonable inferences in support of the jury's verdict. <u>United States v. Spears</u>, 454 F.3d 830, 832 (8th Cir. 2006). "We reverse only if no reasonable jury could find the defendant guilty beyond a reasonable doubt." <u>Id.</u> Under this strict standard, we do not weigh the evidence anew or reassess the credibility of the witnesses. <u>United States v. Exson</u>, 328 F.3d 456, 460 (8th Cir.), <u>cert.</u> <u>denied</u>, 540 U.S. 1011 (2003).

One Star's arguments all implicate credibility assessments made by the jury to which we must defer. "Assessing the credibility of witnesses is a matter properly left to the jury." <u>Id.</u> (internal marks omitted). Resolving the credibility issues in favor of the verdict, as we must, we conclude that the evidence was sufficient to support One Star's convictions for aggravated sexual abuse.

III.

Accordingly, we affirm the judgment of the district court.

_____