**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 07a0155n.06**
**Filed: February 26, 2007**

**No. 05-5432**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MACK STONE, | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |
| | ) | |

**Before: SILER, GIBBONS, and ROGERS, Circuit Judges**

**JULIA SMITH GIBBONS, Circuit Judge.** A jury empaneled in the United States District Court for the Middle District of Tennessee convicted defendant-appellant, Mack Stone, of one count of participating in a drug distribution conspiracy in violation of 21 U.S.C. §§ 841 and 846. The district court sentenced Stone, who had two prior felony drug convictions, to the statutorily-mandated term of life imprisonment. Stone appeals his conviction and sentence on various constitutional and procedural grounds.

For the reasons below, we affirm.

**I.**

1

On June 24, 2004, a criminal complaint was filed against defendant-appellant, Mack Stone, alleging that Stone violated 21 U.S.C. § 846 by participating in a conspiracy to distribute crack cocaine. That same day, Drug Enforcement Administration ("DEA") special agent Ron Riddle arrested Stone. On August 25, 2004, a grand jury empaneled in the Middle District of Tennessee returned an indictment charging Stone with conspiring to knowingly and intentionally distribute fifty grams or more of a mixture or substance containing a detectable amount of cocaine base, or crack cocaine, in violation of 21 U.S.C. §846. Stone elected to proceed to trial on the charge against him.

The evidence presented at Stone's trial identified a house located at 1900 Cephas in Nashville, Tennessee as a distribution point in a narcotics operation. With the assistance of confidential informants and cooperating coconspirators, law enforcement officials engaged in a series of controlled buys out of 1900 Cephas and, upon executing a search warrant on the house on February 25, 2004, discovered drugs, firearms, cash, and numerous individuals, including Stone. The government produced various coconspirators who identified Stone as a leader of the operation at 1900 Cephas and testified to assisting Stone in the preparation of crack cocaine for distribution, securing the house at 1900 Cephas, and supplying narcotics to Stone for sale.

On November 5, 2004, the jury returned a verdict of guilty, finding that Stone conspired to distribute fifty grams or more of crack cocaine. On February 24, 2005, the court sentenced Stone to life in prison, the mandatory term of imprisonment provided under 21 U.S.C. § 841 for individuals with two or more prior drug felony convictions. In addition, the court directed Stone to pay a fine of $25,000, the minimum amount recommended under the Guidelines, and a $100.00 special assessment. Stone appealed.

**II.**

Stone raises a series of claims on appeal.

## A.

Stone challenges the district court's refusal to permit his attorney to pursue additional questioning of the venire panel concerning the principles of the presumption of innocence and guilt beyond a reasonable doubt.

Rule 24 of the Federal Rules of Criminal Procedure, which governs *voir dire*, provides, in pertinent part:

> **(a) Examination**
> **(1) In General**. The court may examine prospective jurors or may permit the attorneys for the parties to do so.
> **(2) Court Examination**. If the court examines the jurors, it must permit the attorneys for the parties to:
> **(A)** ask further questions that the court considers proper; or
> **(B)** submit further questions that the court may ask if it considers them proper.

Fed. R. Crim. P. 24(a)(1)-(2). Rule 24 "invests wide discretion in trial judges in determining the questions to be asked of veniremen, and the prevailing rule is that the court's determination about the questions to be put to the jury will not be disturbed without a clear showing of abuse of discretion. *United States v. Blount*, 479 F.2d 650, 651 (6th Cir. 1973).

Before trial began, the district court twice discussed the appropriate burden of proof and the presumption of innocence with the venire panel:

> Q: Those of you who served as a juror in a civil case, the burden in a criminal case such as this is that the government must prove a defendant's guilt beyond a reasonable doubt. There is a very high and strict standard of proof. Does everybody who sat as a juror in a civil case understand that in this case the burden of proof on the government is much higher than it was on the plaintiff in a civil case?
>
> . . . .

3

Q: In this case, the defendant is presumed innocent until such time, if ever, the government proves his guilt beyond a reasonable doubt under the Federal Rules of Evidence. And you have to treat the defendant at this very moment [as if] he is innocent. Can every member of the jury panel assure me that, notwithstanding the charge, that this man stands innocent? Is there any doubt about that or is unable to do so?

No member of the panel expressed a lack of understanding or unwillingness to act in accordance with these principles. Counsel for the government questioned the jury further:

Now, the Court told you already what the burden of proof is, which is beyond a reasonable doubt, which is the same in any criminal case, whether it's a DUI, a murder, or a robbery, or a drug deal. Is there anybody here that has some sort of problem with that standard, whether it's too low a standard or too high a standard, either way? Fair enough.

When defense counsel attempted to engage the jury on the issues further, the court intervened, directing him to "move on." Defense counsel objected, and the district court, before recessing the panel, reiterated its previous statements:

Ladies and gentlemen of the jury, the burden of proof in this case is beyond a reasonable doubt, as I mentioned to you earlier. In summary, beyond a reasonable doubt means that the government is not to required to present such proof as to remove all doubt, but the government must present such proof as to establish the facts and such degree of proof that you would rely on that proof in deciding the most serious matters of your personal life. Is there anybody who has any difficulty understanding that? If so, please raise your hand.

Receiving no response, the court recessed. On appeal, Stone argues the district abused its discretion in refusing his attorney the opportunity to further explore the subjects of the presumption of innocence and burden of proof with the jury.

The record is clear that both the trial court and an attorney for the United States engaged the panel on the issues of the presumption of innocence afforded a criminal defendant and the burden imposed on the government to establish guilt beyond a reasonable doubt. Stone fails to make a

persuasive argument that, given the opportunity, his attorney would have addressed the topic in a manner so novel that it might have elicited a response from the panel forming the basis for a juror challenge. *See Mu'Min v. Virginia*, 500 U.S. 415, 431 (1991) ("*Voir dire* examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges."). Moreover, Stone points to no legal authority for the proposition that a district court, having adequately addressed an issue in its questioning of the jury, must then permit counsel to engage in a duplicative recitation of the same questions. Indeed, such a rule would be contrary to the language of Rule 24, which affords the district court substantial discretion in administering *voir dire*. *Id.* at 424 ("[T]he trial court retains great latitude in deciding what questions should be asked on *voir dire*.").

The case on which Stone relies, *United States v. Hill*, 738 F.2d 152 (6th Cir. 1984), does not support his claim. There, the district court refused to pose questions to prospective jurors regarding reasonable doubt and the presumption of innocence and did not allow counsel to do so. *Id*. at 153. The court of appeals deemed this refusal erroneous, citing the Sixth's Circuit's prior holdings that a "fairly phrased question" concerning the presumption of innocence "must, if requested, be submitted by the trial court as a fundamental part of voir dire." *Id. Hill* is not analogous to the instant case. In *Hill*, the trial court both neglected to conduct its own inquiry and refused defense counsel the opportunity to do so. The district court presiding over Stone's trial discussed the presumption of innocence exhaustively during the course of its *voir dire* of the panel members and revisited the issue on defense counsel's objection.

We conclude that the district court did not abuse its discretion in refusing to permit defense counsel to ask further questions on the presumption of innocence, and we reject Stone's claim on that ground.

**B.**

Stone challenges the district court's handling of the testimony of Anthony Corley, a witness called by the government who had previously indicated his intent to invoke his Fifth Amendment right not to incriminate himself if called to testify.

On the first day of trial, outside of the presence of the jury, the United States informed the court that it intended to demonstrate that the lease agreement governing 1900 Cephas was fraudulently executed as part of an attempt to disguise Stone's connection to the house. The government sought to call Anthony Corley, the operating manager for AEC Investments Incorporated, the owner of 1900 Cephas, as custodian of all documents for that entity. The government had previously served Corley with two separate subpoenas, one directed to him personally and one directed to him as custodian of records for AEC. Corley's attorney, Jim Price, advised the court that Corley was the target of a money laundering investigation and intended to assert his Fifth Amendment right against self-incrimination if called to testify. As to the personal subpoena served on Corley, the district court determined that any information sought by the government would fall within the scope of information material to the money laundering investigation. As to Corley's obligations as custodian of the records of AEC Investments, it ruled that the government could pose questions that went to authenticating the lease documents and that Price, Corley's attorney, would be permitted to sit next to Corley during his testimony. Defense counsel objected to permitting the jury to hear Corley invoke his Fifth Amendment right on the

ground that it would prejudice Stone. During his testimony, Corley exercised his Fifth Amendment right not to answer the government's questions with noticeable frequency, approximately thirty times. The district court twice instructed the jury not to draw any adverse inferences against Stone based upon Corley's assertion of his Fifth Amendment right.

Stone challenges the district court's decision to permit questioning of Anthony Corley on two grounds, arguing that: (1) the government engaged in prosecutorial misconduct by attempting to bolster its case through the prejudicial impact of Corley's repeated invocation of the Fifth Amendment and (2) his Sixth Amendment right to confront the witnesses assembled against him was violated by Corley's Fifth Amendment assertion.

**1.**

Because Stone's attorney failed to object to the prosecutor's examination of Corley at trial, we evaluate his claim of prosecutorial misconduct utilizing the plain error standard. *United States v. Blood*, 435 F.3d 612, 627-28 (6th Cir. 2006). To establish plain error, a defendant must demonstrate: "(1) that an error occurred in the district court; (2) that the error was plain, i.e., obvious or clear; (3) that the error affected defendant's substantial rights; and (4) that this adverse impact seriously affected the fairness, integrity or public reputation of the judicial proceedings." *United States v. Abboud*, 438 F.3d 554, 583 (6th Cir. 2006).

In the Sixth Circuit, a court's review of a prosecutorial misconduct claim proceeds in two stages: the court first considers whether a prosecutor's remarks were improper and, second, determines whether the remarks were sufficiently flagrant to warrant reversal. *United States v. Jamieson*, 427 F.3d 394, 413 (6th Cir. 2005). In making this second determination, the court looks to four factors: "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2)

7

whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *Blood*, 435 F.3d at 628. All of the factors are relevant, but the second factor is particularly significant. *United States v. Owens*, 426 F.3d 800, 807 (6th Cir. 2005). "In examining prosecutorial misconduct claims, it is necessary to view the conduct at issue within the context of the trial as a whole." *United States v. Beverly*, 369 F.3d 516, 543 (6th Cir. 2004).

The Sixth Circuit has endorsed the use of a witness who has indicated in advance that he will refuse to answer certain questions on Fifth Amendment grounds where refusing to permit the testimony would seriously prejudice the government's case. *United States v. Vandetti*, 623 F.2d 1144, 1147 (6th Cir. 1980). The court explained in *Vandetti*:

> Government counsel need not refrain from calling a witness whose attorney appears in court and advises court and counsel that the witness will claim his privilege and will not testify. However, to call such a witness, counsel must have an honest belief that the witness has information which is pertinent to the issue in the case and which is admissible under applicable rules of evidence, if no privilege were claimed.

*Id.* (internal quotation marks omitted). Stone does not contest the government's claim that Corley's testimony was necessary to its case or challenge the admissibility of Corley's testimony. Instead, he offers the bald assertion that the government questioned Corley on topics beyond his knowledge as custodian of records for AEC Investments in a "conscious and flagrant attempt [by the government] to build its case out of inferences arising from the use of the testimonial privilege." *Namet v. United States*, 373 U.S. 179, 186 (1963); *see also United States v. Clark*, 988 F.2d 1459, 1464 (6th Cir. 1993). The record provides no support for this claim.

Assuming, *arguendo*, that counsel for the government erred in its examination of Corley, the conduct at issue was not sufficiently flagrant to warrant reversal. Any prejudice to Stone was limited

8

to a discrete portion of the trial, involving only one witness whose testimony never directly implicated Stone in the conspiracy with which he was charged. Moreover, there was no allegation that Stone was somehow involved in any alleged wrongdoing by Corley. Any negative inferences drawn as to Corley's criminality would not necessarily be imputed to Stone. *Id.* ("While repeated assertions of the Fifth Amendment privilege may create an undue inference of guilt if elicited during the cross-examination of a criminal defendant, the witnesses were not on trial and any adverse inference had no relation to the question of whether [the defendant] killed [the victim]."). Moreover, the trial court twice instructed the jury not to draw inferences of any kind from Corley's decision not to answer particular questions, and it is appropriate to assume the jury complied with that direction. *See United States v. Foster*, 376 F.3d 577, 592 (6th Cir. 2004) ("A crucial assumption underlying th[e] system [of trial by jury] is that juries will follow the instructions given them by the trial judge.") (internal quotation marks omitted) (alterations in original). Given these circumstances, any claim by Stone that the government's actions produced an error that was obvious and clear is unavailing.

**2.**

Stone claims, in addition, that he was denied the right to confront the witnesses against him by virtue of Corley's invocation of his Fifth Amendment right not to answer questions. Stone's Sixth Amendment claim presents a legal question we review *de novo*. *United States v. Tarwater*, 308 F.3d 494, 517 (6th Cir. 2002).

The Sixth Amendment's confrontation clause "bestows upon the criminal defendant the right to confront the witnesses against him, and the opportunity to cross-examine such witnesses." *Stewart v. Wolfenbarger*, 468 F.3d 338, 347 (6th Cir. 2006). The Sixth Circuit has recognized the

9

threat posed by the government's use of a witness who takes the stand only to invoke his Fifth Amendment right not to answer questions. *See Vandetti*, 623 F.2d at 1148.

In this case, however, Stone's counsel made no attempt to cross-examine Corley. Therefore, it is impossible to ascertain whether Stone was, in fact, effectively precluded from cross-examining Corley concerning his direct examination testimony. Although Corley refused to answer a substantial number of the questions posed by the United States on direct examination, he offered responses to several of those questions. Stone was, therefore, not confronted with a situation in which any attempt at cross-examination would have been futile. This court has recognized that the confrontation clause's "predominant objective – perhaps its *only* objective – is preventing the admission of testimonial statements against criminal defendants who never had an opportunity to cross examine the declarant." *United States v. Franklin*, 415 F.3d 537, 545 (6th Cir. 2005) (citing *Crawford v. Washington*, 541 U.S. 36, 69-70 (2004)). Here, Stone has failed to demonstrate that the district court's decision undermined this objective.

## C.

Stone also alleges error by the district court and the government during the recall testimony of Agent Ron Riddle.

At the government's request, the district court permitted the recall of DEA Agent Riddle to testify as to Stone's residence at 1900 Cephas. The court advised the jury that it permitted the recall "for a very limited purpose," that is, to allow the admission of Riddle's testimony as to his knowledge of Stone's residence. On recall, the United States engaged Riddle in a discussion concerning the contents of a personal history report completed following Stone's arrest. Agent

Riddle testified that on the personal history report Stone identified 1900 Cephas as his residence.

At issue is Agent Riddle's testimony immediately following his comments on Stone's residence:

Q: What did the defendant tell you was his occupation?
A: On here, it's listed as drug dealer.
Q: Is that the block 30 [of the form] we referred to?
A: Yes, sir; it is.
MR. KOSHY [counsel for the United States]: We move that as Exhibit Number 14.
THE COURT: Without objection, it will be entered.

Defense counsel objected, asserting that the government should have provided the defense with the personal history report as part of pretrial discovery and that Agent Riddle's comment had been irreparably prejudicial. Counsel for the United States, when confronted by the court concerning his actions, withdrew his motion to admit the report into evidence. At defense counsel's request, the court issued a curative instruction, and trial proceeded.

Stone raises two issues on appeal. First, he claims that the government failed to supply his attorney with copies of the personal history report prior to the discovery deadline in violation of Fed. R. Crim. P. 16(a)(1)(A). Second, he claims the government attorney committed prosecutorial misconduct in exceeding the scope of the recall.

**1.**

This court reviews the district court's Rule 16 decision for an abuse of discretion. *United States v. Clark*, 385 F.3d 609, 619 (6th Cir. 2004).

Rule 16 requires the government to disclose the substance of "any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." Fed. R. Crim. P. 16(a)(1)(A). This provision, on which Stone relies, explicitly covers only information that a

11

defendant provides in response to interrogation. Here, the information appearing in the personal history report constituted standard identification information provided following arrest. Such "routine biographical information elicited during the booking process does not constitute interrogation under a Fifth Amendment *Miranda*-rights analysis." *United States v. Godinez*, 114 F.3d 583, 589 (6th Cir. 1997). Thus, the government was not obligated under Rule 16(a)(1)(A) to provide the personal history report to Stone prior to trial. *See id.* at 588-89 (concluding that the government had no obligation to provide pretrial a personal history questionnaire taken by a United States Marshal during the booking of defendant because the document contained routine identification information not provided in response to "questioning designed to elicit incriminating information from a defendant").

### 2.

Because defense counsel objected at trial to the government's alleged misconduct during the recall of Agent Riddle, his prosecutorial misconduct claim is reviewed *de novo*. *United States v. Owens*, 426 F.3d at 806.

"An improper question by government counsel may constitute prosecutorial misconduct." *United States v. One Star*, 465 F.3d 828, 832 (8th Cir. 2006). As the trial court acknowledged, the government exceeded the boundaries of the recall, venturing into a revelation of Stone's claimed occupation. Given the court's clear explanation of the purposes for Agent's Riddle's recall testimony, this was misconduct. Considered in the context of the entire proceeding, however, Agent Riddle's statement was not so prejudicial as to deprive Stone of a fair trial. The district court provided, at defense counsel's request, a curative instruction directing the jury to consider Agent

12

Riddle's recall testimony only to the extent it addressed the question of Stone's residence.[1]

Moreover, the government withdrew its motion to admit the personal history report into evidence.

Finally, the question stood amidst a large body of incriminating evidence furnished throughout the

course of the trial. Thus, it cannot fairly be said that any misdeed by the prosecution was "so

pronounced and persistent" that it permeated the entire trial. *United States v. Crayton*, 357 F.3d 560,

573 (6th Cir. 2004).

**D.**

Stone challenges under Rule 16 the district court's decision to permit the introduction of

materials transmitted by the government after the discovery deadline. The panel reviews the district

court's decision under Fed. R. Crim. P. 16 for an abuse of discretion. *United States v. Quinn*, 230

F.3d 862, 866 (6th Cir. 2000).

In a September 22, 2004, order, the district court established an October 18, 2004, deadline

for discovery to be exchanged between the parties. Prior to trial, Stone filed a series of motions *in

limine* seeking suppression of discovery materials transmitted by the government following the

expiration of the discovery deadline, including: (1) a lease agreement relating to the 1900 Cephas

house; (2) handwriting samples taken of defendant; (3) a series of police reports; and (4) hospital

records relating to the hospital stay of Norman Minter. The court denied Stone's motions. Stone

---

[1]Notably, Stone's trial counsel requested no more than a curative instruction and the opportunity to examine Agent Riddle further. The district court complied with that request and provided the promised instruction. Stone's attorney did not request a mistrial or any other form of relief before the district court, and even on appeal he does not claim that the district court was obligated to declare a mistrial *sua sponte*. *Cf. Dotson v. Scotty's Contracting, Inc.*, 86 F.3d 613, 618 (6th Cir. 1996) ("[I]f the plaintiff had wanted the trial court to take some action, she should have asked the court to do so.").

claims that the late transmission of the documents by the government constituted a violation of Fed. R. Crim. P. 16.

Rule 16 requires the disclosure by the government, on defendant's request, of certain documents and objects if those items are "within the government's possession, custody, or control" and material to a defendant's defense, intended for presentation during the government's case-in-chief, or obtained from or belonging to defendant. Fed. R. Crim. P. 16(a)(1)(E). Even if the government violated Rule 16 in failing to transmit the materials in question before the discovery deadline, Stone has failed to demonstrate that the district court abused its discretion when it refused to grant Stone's request for exclusion.

Rule 16(d)(2) identifies a range of remedies for discovery violations in criminal proceedings. Fed. R. Crim. P. 16(d)(2) (permitting order of discovery or inspection; grant of a continuance; suppression; or any other order "that is just under the circumstances" when Rule 16 is violated). Exclusion of evidence is the most serious and least favored of those remedies. *See United States v. Ganier*, 468 F.3d 920, 927 (6th Cir. 2006) (observing that district courts should adopt the "least severe sanction necessary doctrine" and utilize suppression as a "remedial device" limited to appropriate circumstances) (quoting *United States v. Maples*, 60 F.3d 244, 247-48 (6th Cir. 1995)); *Maples*, 60 F.3d at 247 ("[S]uppression of evidence must be viewed as an undesirable remedy reserved for cases of incurable prejudice or bad faith conduct demanding punishment by the court."). This court has detailed a series of factors to be considered in determining whether suppression is an appropriate response to a Rule 16 violation: (1) the reasons for any delay in producing materials, including ill intent or bad faith; (2) the degree of prejudice, if any, to the defendant; and (3) whether

any prejudice may be cured with a less severe course of action like a continuance or a recess. *Maples*, 60 F.3d at 247.

Here, all of the factors identified in *Maples* point toward affirmance of the district court's decision. First, there is no evidence that the government acted in bad faith. *Ganier*, 468 F.3d at 927 (reversing district court's exclusion of expert testimony pursuant to Rule 16 where, among other things, there was no evidence of bad faith conduct by the United States). Indeed, as soon as the government received the materials at issue, it transmitted those materials to the defense. Additionally, Stone does not argue that he was prejudiced by the delayed conveyance of the materials. *See Quinn*, 230 F.3d at 866 (concluding, in light of defendant's failure to demonstrate prejudice, that district court did not abuse its discretion in permitting testimony of undisclosed expert testimony). Finally, Stone sought the most severe remedy available for a violation of Rule 16 and expressly declined to have the trial continued in order to provide his counsel with additional time to review any discovery untimely filed. Having refused this remedy Stone "is not in a position to fault the court for denying the motion to exclude the [disputed evidence]." *United States v. Bartle*, 835 F.2d 646, 650 (6th Cir. 1987).

**E.**

Stone challenges the district court's admission of testimony concerning his alleged involvement in a murder, an assault on a coconspirator, and the presence and use of firearms at 1900 Cephas.

"Evidentiary rulings are reviewed under the abuse-of-discretion standard." *United States v. Seymour*, 468 F.3d 378, 386 (6th Cir. 2006). A reviewing court "takes the maximal view of the probative effect of the evidence and a minimal view of its unfairly prejudicial effect, and will hold

15

that the district court erred only if the latter outweighs the former." *United States v. Foster*, 376 F.3d 577, 592 (6th Cir. 2004). "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice, and those decisions will not be lightly overruled." *United States v. Jackson-Randolph*, 282 F.3d 369, 376 (6th Cir. 2002). Rule 402 of the Federal Rules of Evidence permits the admission of "[a]ll relevant evidence." Rule 403 acts as a limit on Rule 402, preventing the introduction of relevant evidence the probative value of which is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Stone challenges the admission of three pieces of evidence under Rules 402 and 403: (1) his alleged participation in the murder of Chris Gooch; (2) his alleged assault on Norman Minter; and (3) evidence concerning the guns found within 1900 Cephas. As to each piece of evidence, he argues that the material was irrelevant to the charges against him or, in the alternative, of a sufficiently prejudicial nature to warrant exclusion under Rule 403.

**1.**

Prior to trial, Stone filed a motion *in limine* seeking to exclude evidence relating to the murder of Chris Gooch. At the November 1, 2004, pretrial hearing before the district court, the United States represented that it did not intend to offer evidence concerning the Gooch murder because that murder was the subject of a pending investigation. At trial, however, during the course of defense counsel's cross-examination of Nathan Morgan, an individual who testified to conducting drug-related transactions with Stone, counsel asked Morgan to read the contents of a letter sent by Morgan to Stone following Stone's arrest. That letter expressed Morgan's concerns that Stone might believe that Morgan "turn[ed] state" on him. In the letter, Morgan assured Stone that he had never

16

been around Stone and had never done business or "hung with" Stone and, thus, had nothing to tell.

Following the introduction of the letter, in a conference outside of the presence of the jury, counsel for the government informed the court that certain portions of Morgan's letter actually referred to Morgan's knowledge of Stone's alleged participation in the murder of Chris Gooch. Government counsel explained that he intended to elicit testimony from Morgan on redirect examination concerning the Gooch murder in order to provide the jury with information about the circumstances surrounding the writing of the letter. Counsel explained that he "had no intent of bringing any of that up," but such testimony was necessary to understand the letter's contents properly. The district court agreed that the defense had opened the door to such evidence and overruled defense counsel's objections. On redirect, Morgan testified that Stone had made admissions to him concerning a murder in which Stone was involved. Morgan also testified that certain portions of the letter– specifically the letter's inquiry, "how can I turn state on you when I never was around you[?]" – referred to Stone's belief that Morgan would relay information to the police concerning that murder. On appeal, Stone argues that the testimony concerning the Gooch murder was irrelevant or, alternatively, that its probative value was substantially outweighed by the danger of unfair prejudice.

While the murder of Chris Gooch may have been irrelevant prior to the introduction of the letter, defense counsel raised the subject of Morgan's motivation for writing the letter and the meaning of its contents when he introduced the letter into evidence. "When one party has 'opened the door' on an issue, by eliciting prejudicial or inadmissible testimony, an opponent, in the court's discretion, [may] introduce evidence on the same issue to rebut any false impression that might have

17

resulted from the earlier admission." *United States v. Segines*, 17 F.3d 847, 856 (6th Cir. 1994) (internal quotation marks omitted) (alteration in original). Although the evidence at issue is undeniably prejudicial, the district court did not abuse its discretion in allowing its admission. The defense introduced the letter in an apparent effort to undercut Morgan's claim that he had firsthand knowledge of Stone's drug distribution operation, and thus, it was defense counsel who raised the question of the accurate meaning of the letter. *Id.* ("[E]vidence whose probative value might not be thought to outweigh its prejudicial effect if offered on direct examination may well be admitted during redirect examination for the purposes [of clarifying a matter raised in a previous examination].").  In addition, the prejudicial impact of Morgan's statements was mitigated by the court's caution to the jury that Morgan's testimony was offered "to explain the circumstances concerning th[e] letter that was raised on cross examination."     Given defense counsel's role in prompting a discussion of the Gooch murder, it was not an abuse of discretion for the district court to admit Morgan's testimony regarding his intended meaning in the letter.

## 2.

Stone also challenges the district court's admission of evidence relating to an alleged assault by Stone on Norman Minter, a coconspirator, and Minter's hospital records. The government sought to prove at trial that Stone assaulted Minter following Minter's sale of a firearm, an AK-47 or "chopper," producing serious injuries. James Alan Jennings, another coconspirator, testified that Stone told him about the assault on Minter, explaining that Stone hit Minter "across the head with a bottle or a plank or something." Stone informed Jennings that Minter had sold Stone's gun without Stone's permission, prompting the attack. Michael Wallace, who admitted to participating in drug

18

transactions with Stone, testified that Stone informed him that Minter was hospitalized "on the AK," or chopper, but had not told Wallace about the severity of any injuries sustained by Minter.

Stone complains that the evidence relating to Minter's attack was irrelevant or, alternatively, sufficiently prejudicial to warrant exclusion under Rule 403. The district court disagreed with Stone's position on the relevance of Minter's assault, noting that although the chopper was not admitted into evidence, Morgan provided testimony relating to Stone's possession of the chopper. The court concluded: "[T]here is sufficient proof for the government's theory that these guns were part of the operation of the drug house. And I think the proof that he got angry when it was sold and hit somebody underscores an [sic] importance of why he wanted it."

In *United States v. Noe*, 411 F.3d 878 (8th Cir. 2005), the Eighth Circuit considered a similar evidentiary claim by a criminal defendant charged with conspiring to distribute methamphetamine and marijuana. The government sought to introduce evidence that the defendant assaulted an individual who took drugs without paying for them. *Id.* at 887. The defendant moved to exclude the evidence on the ground that it was irrelevant to the drug conspiracy charges pending against him. *Id.* Rejecting the defendant's claim, the court observed that "[e]vidence of violent acts committed by conspirators during and in relation to the conspiracy are direct evidence of the conspiracy" and therefore admissible. *Id.* (internal quotation marks omitted). As to the inflammatory nature of the evidence of the assault, the court disagreed with defendant's contention that the evidence of the assault was impermissibly prejudicial. *Id.* It wrote:

> [The defendant's] use of violence underscored to [the victim] and others in the conspiracy the seriousness of the business and the consequences of disloyalty. It was highly probative of the conspiracy itself and Schultz's leadership role within it. Although doubtless graphic, the pliers incident evidence was not so inflammatory as to mandate a finding that it was so unfair and had such a tendency to support a

19

> decision on an improper basis that the district court abused its discretion in admitting it.

*Id.*

The court's analysis in *Noe* provides useful guidance in the present case. The evidence of Minter's assault, while prejudicial, established the chopper's value to Stone as part of the arsenal maintained by the organization and confirmed Stone's leadership role within the conspiracy, demonstrating that he possessed the authority to mete out punishment for perceived missteps by coconspirators. The district court did not abuse its discretion in concluding that the evidence was relevant to the case before it and not likely to "suggest a decision on an improper basis." *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991).

**3.**

As part of its case against Stone, the government sought admission of many of the firearms discovered in the 1900 Cephas house and elicited testimony about the presence and use of firearms at the house. Stone argues that the evidence of firearms was irrelevant to the question of whether he engaged in a criminal conspiracy to sell illegal narcotics. He acknowledges, however, that Sixth Circuit precedent recognizes the relevance of firearms in the execution of drug trafficking conspiracies. *See United States v. Ware*, 161 F.3d 414, 417-18 (6th Cir. 1998) (observing that guns seized were evidence of involvement in crack cocaine distribution conspiracy); *United States v. Paulino*, 935 F.2d 739, 754 (6th Cir. 1991) ("This court has on several occasions recognized that firearms and ammunition are tools of the drug trafficking trade and have been admitted in drug distribution cases as tools of the drug conspiracy."), *superseded by statute on other grounds*, U.S.S.G. § 3B1.1; *Jennings v. Rees*, 800 F.2d 72, 75 (6th Cir. 1986) (noting that a loaded gun discovered during course of search could "fairly be viewed as a tool of the drug trafficker's trade").

20

Given this precedent, the centrality of firearms in the carrying out of drug conspiracies, and "the common link between guns and drugs," *United States v. Wade*, 318 F.3d 698, 703 (6th Cir. 2003), the district court did not abuse its discretion in allowing evidence of the firearms discovered in 1900 Cephas.

**F.**

Stone claims that the district court's imposition of a heightened sentence on the basis of prior convictions found by the court, not a jury, violated his Sixth Amendment right to trial by jury. We review *de novo* Stone's constitutional challenge to his sentence. *United States v. Copeland*, 321 F.3d 582, 601 (6th Cir. 2003).

It is well-established that a defendant is entitled to a jury determination of those facts which might increase the range of penalties to which he is subject. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). A well-recognized exception limits this principle: a defendant may receive a heightened sentence on the basis of a judicial finding of a prior conviction. *See United States v. Booker*, 543 U.S. 220, 244 (2005) (reaffirming *Apprendi* holding that any fact *other than a prior conviction* necessary to support a sentence exceeding the maximum punishment authorized by facts established by plea of guilty or a jury verdict must be admitted by defendant or proved to jury beyond a reasonable doubt).

Stone urges reversal on the ground that certain members of the Supreme Court have expressed reservations about the correctness of the Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), "which draws an exception to the *Apprendi* line of cases for judicial factfinding that concerns a defendant's prior convictions." *Shepard v. United States*, 544 U.S. 13, 27-28 (2005) (Thomas, J., concurring). This court has previously declined to overrule the prior

21

conviction exception when presented with the same arguments Stone advances. *See United States v. Hill*, 440 F.3d 292, 299 n.3 (6th Cir. 2006); *see also United States v. Gatewood*, 230 F.3d 186, 192 (6th Cir. 2000) ("Although the Court's decision in *Apprendi* arguably casts doubt on the correctness of the holding in *Almendarez-Torres*, . . . *Almendarez-Torres* remains the law."). We, like the panels before us, are bound to apply the Supreme Court's existing precedent on this issue, *see United States v. Beasley*, 442 F.3d 386, 392 n.3 (6th Cir. 2006), and deny Stone's claim.

## G.

Stone challenges the district court's determination regarding his ability to pay a fine. That conclusion is a factual finding subject to reversal only upon a showing of clear error. *United States v. Hickey*, 917 F.2d 901, 906 (6th Cir. 1990).

The Sentencing Guidelines require the imposition of a fine within the appropriate range "in all cases," unless a defendant demonstrates an inability to pay. U.S.S.G. § 5E1.2(a). "It is the defendant's burden to establish that he cannot and will not be able, even under an installment schedule, to pay the assessed fine." *United States v. Ukomadu*, 236 F.3d 333, 340 (6th Cir. 2001). Current assets are not determinative of an ability to pay a fine. *United States v. Perez*, 871 F.2d 45, 48 (6th Cir. 1989). "[S]ignificant indicators" of a defendant's inability to pay an assessed fine include a failure to post bond and the defendant's eligibility for court-appointed counsel. U.S.S.G. § 5E1.2 cmt. n.3 (2004).

Stone's offense level of 44 made him eligible for a fine in the range of $25,000 to $8 million. U.S.S.G. § 5E1.2. In imposing a fine on Stone, the district court relied on the findings of the Presentence Report, which outlines the information provided by Stone in his pretrial services report concerning his assets. Stone reported ownership of four vehicles: (1) a 1997 GMC vehicle; (2) a

22

1990 Crown Victoria; (3) a 2002 GMC Jimmy, purchased by Stone for $5000 and sold for an unknown amount; and (4) a 1990 Grand Marquis that he gave to his son upon his conviction. Stone informed the probation officer that upon his conviction, his family members took his belongings, including any jewelry and household furnishings. Stone also claimed to have $68 in his jail account. The PSR also indicates that Stone, at the time, owed $495 to Nashville Electric and $6,604 in unpaid child support to the Tennessee Department of Human Services. According to the PSR, Stone declined to provide a response to a question about any existing bank accounts. The PSR concluded on the basis of this information and Stone's "lack of forthrightness" that Stone had the ability to pay a fine at the bottom of the Guidelines range.

Prior to sentencing, Stone objected to the PSR's statements concerning his bank accounts and ability to pay a fine. At sentencing, the district court imposed the lowest fine allowed under the Guidelines: "The Court under the Guidelines, based upon the evidence at trial and your failure to cooperate concerning what finances you have and bank account[s], imposes a fine of $25,000. That is the fine under the Guidelines."

In his challenge to the district court's decision, Stone points to the magistrate judge's determination early in the proceedings against him that he was financially unable to secure counsel or to pay the fee of any witness. The United States responds that the magistrate made its determination without the benefit of many of the facts later found at trial and by the sentencing court, that is, that Stone was at the head of a major conspiracy to distribute narcotics.

Stone's financial status prior to trial is relevant to his ability to pay a fine. The law of this circuit makes clear, however, that a defendant must establish both current *and* future inability to pay a fine. *See United States v. Blanchard*, 9 F.3d 22, 26 (6th Cir. 1993) (refusing to disturb fine

23

imposed by district court when defendant failed to offer proof regarding his future inability to pay a fine). While $25,000 constitutes a substantial monetary penalty, particularly for an individual facing a life sentence, Stone has failed to provide the district court or this court with any evidence demonstrating his future inability to pay and has, therefore, failed to meet his burden of establishing the impropriety of the district court's decision. Stone's insistence that the district court's imposition of a $25,000 fine for his lack of candor constitutes unwarranted "piling on" of punishment cannot, in the absence of evidence demonstrating both a present and future inability to pay, form the basis for reversal of the district court's decision. We accordingly affirm the district court's imposition of a $25,000 fine.

## H.

Stone argues that the district erred in admitting the testimony of Sharon Trent, a witness called as an expert by the government as part of its required evidentiary showing relating to Stone's prior felony drug convictions. The district court's decision to admit Trent's testimony is reviewed for an abuse of discretion. *Tarwater*, 308 F.3d at 512.

The statutory provision under which Stone was charged provides for a mandatory term of life imprisonment for individuals who are found guilty of violating that provision following two or more previous drug felony convictions. 21 U.S.C. §841(b)(1)(A)(iii). In order to secure a heightened sentence under § 841, the government must comply with the procedures set forth at 21 U.S.C. § 851. Under §851(a)(1), the United States is required to file an information prior to trial or the entry of a plea "stating in writing the previous convictions to be relied upon." A defendant who intends to challenge the existence or validity of those convictions must, in turn, file a written response to the government's information, setting forth the basis for any objections. 21 U.S.C. § 851(c)(1). The

24

statute directs the district court to hold a hearing, without a jury, to address any issues raised by the response upon the submission of evidence by both parties. *Id*. The government bears the burden of proof beyond a reasonable doubt on any issue of fact. *Id.*

On October 25, 2004, the government timely filed an information notifying Stone of two prior drug felony convictions in the Criminal Court of Davidson County, Tennessee, on which it intended to rely for an increased sentence. The first conviction, in Case Number 91-D-2338, arose out of Stone's arrest on August 8, 1991, for the sale of cocaine, a Class B felony. The second conviction, in Case Number 92-A-556, arose out of Stone's arrest on November 13, 1991, for the sale or delivery of cocaine on November 13, 1991, a Class B felony. The defendant filed a response on October 29, 2004, and a supplemental response on November 1, 2004, raising constitutional challenges to § 851 and denying the alleged prior convictions. Upon defendant's representation at sentencing that he denied the allegation of the prior convictions, the district court agreed to a hearing at a later date at which time the government would submit evidence of those convictions.

At the hearing on February 24, 2004, the government offered the testimony of Sharon Trent, a member of the Nashville Metro Police Department's Identification Section. Relying on fingerprints appearing on a fingerprint card produced following Stone's arrest for statutory rape in August 1996, Trent concluded that the index finger print appearing on that card matched the index finger print appearing in the arrest report for the August 1991 conviction. Trent was unable to match the prints on the 1996 fingerprint card to the index finger print appearing on the arrest report for the November 1991 arrest because, she testified, the print on the November 1991 arrest report was "unidentifiable." The government also called Detective John Donegan of the Nashville Police Department who served as one of the arresting officers and the case officer for Stone's November

25

1991 arrest. At the sentencing hearing, Donegan identified Stone as the same individual arrested in November 1991. Following the admission of all evidence, the court ruled that the government had sufficiently proven the prior felony offenses necessary to trigger imposition of the mandatory life sentence.

Stone claims on appeal, as he did before the district court, that Trent was not qualified to offer testimony as an expert on the identification of the fingerprints at issue and the district court should have excluded her testimony under Federal Rule of Evidence 702. Rule 702 permits the admission of testimony by a witness qualified as an expert by "knowledge, skill, experience, training, or education" on an issue calling for scientific, technical, or other specialized knowledge, so long as the trial court deems the witness's testimony reliable. *See* Fed. R. Evid. 702.

Trent testified that she had 265 hours of training and took regular proficiency tests. She also testified that she had made "thousands of identifications." The district court relied on Trent's experience, training, and ongoing evaluation as a basis for admitting her testimony. The court rejected Stone's argument that Trent was unqualified to testify because she had not yet completed the Federal Bureau of Investigation certification process, noting that the lack of this one credential went to the weight to be accorded to her testimony, not its admissibility. It concluded:

> [B]ased upon the testimony that the witness has been in the field for many years, has been certified as an expert, at least in two or more court cases, to give opinion testimony about a fingerprint comparison, given that her work is supervised and verified by a supervisor, the Court feels that there is sufficient indicia of reliability to admit the testimony.

In relying on Trent's training and experience as adequate markers of her competence to testify as a fingerprint examiner, the district court acted well within the boundaries of the discretion accorded it under Rule 702, and we reject Stone's challenge to the admission of Trent's testimony.[2]

## I.

Stone asserts that the imposition of a life sentence on the basis of two previous convictions violates the Fifth Amendment's prohibition on double jeopardy and the Eighth Amendment's protections against cruel and unusual punishment. We review *de novo* Stone's constitutional claims relating to his sentence. *United States v. Flowal*, 163 F.3d 956, 963 (6th Cir. 1998).

### 1.

Stone argues that the imposition of a heightened sentence based upon prior convictions constitutes impermissible double jeopardy. The Sixth Circuit has flatly rejected this argument at least twice. *Flowal*, 163 F.3d at 963; *United States v. Mack*, 938 F.2d 678, 681 (6th Cir. 1991). We are bound to apply these holdings and accordingly reject Stone's double jeopardy claim.

### 2.

Stone argues that the imposition of a mandatory life sentence on the basis of his prior felony drug convictions constitutes cruel and unusual punishment. When considering Eighth Amendment challenges to a sentence, this court applies the "narrow proportionality principle" described in Justice Kennedy's concurring opinion in *Harmelin v. Michigan*, 501 U.S. 957, 995-97 (1991) (Kennedy, J., concurring). *United States v. Hill*, 30 F.3d 48, 50 (6th Cir. 1994). Under this approach, the Eighth

---

[2]Stone's argument relating to Trent's testimony implies that absent that testimony, the United States lacked adequate evidence to establish the existence of his previous drug felony convictions. The government offered additional evidence, however, including the testimony of Donegan, who identified Stone as the perpetrator of the November 1991 conviction, and the two judgments entered in the Tennessee criminal court.

Amendment does not demand strict proportionality between crime and sentence but forbids "only extreme sentences that are grossly disproportionate." *Harmelin*, 501 U.S. at 1001 (Kennedy, J., concurring). The petitioner in *Harmelin* challenged the imposition in state court of a mandatory term of life imprisonment without parole for possession of 672 grams of cocaine. *Id.* at 961. The life sentence constituted cruel and unusual punishment in his case, he claimed, because he had no prior felony convictions. *Id.* at 994. The Court disagreed and affirmed the sentence. *Id.* at 996.

In *Hill*, this court, relying on *Harmelin*, affirmed the imposition of a mandatory life sentence imposed for a violation of 21 U.S.C. § 841(a)(1), finding the defendant's sentence was not grossly disproportionate in light of his two previous felony drug convictions and the 177.8 grams of cocaine base involved in the distribution conspiracy for which he was convicted. 30 F.3d at 50. Four years later, the Sixth Circuit affirmed a life sentence imposed on a defendant with two prior drug felony convictions who was convicted of possession of cocaine with intent to distribute. *Flowal*, 163 F.3d at 963. Although the court in *Flowal* observed that a life sentence was "rather extreme," given the offense, *id.*, the court pronounced itself bound by the precedent established in *Hill*. *Id.*

Stone acknowledges that his Eighth Amendment claim is at odds with the Sixth Circuit's decisions in *Hill* and *Flowal*, (Appellant's Br. at 32), and offers no justification for a differing result in this case. Consequently, we deny his constitutional claims relating to the district court's imposition of a life sentence based upon his prior felony drug convictions.

### III.

For the foregoing reasons, we affirm the judgment of the district court.